No. 14,371.

## SHUMAN *v.* THE CITY OF FORT WAYNE.

CONSTITUTIONAL LAW.—*City Ordinance.—Pawnbrokers.—License.—Examination of Goods.—Police Power.*—An ordinance of the city of Fort Wayne making it unlawful for any person to carry on the business of a pawnbroker without having first procured a license, and making it the duty of every person engaged as a licensed pawnbroker to keep at his place of business a book in which he shall enter a description of the personal property pawned, the time when it was received, noting any descriptive marks found on the same, with the name and residence of the person by whom it was left, and providing that such book and such personal property should be subject to the inspection of the police power of the city, is not a violation of the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, as the business of the pawnbroker is subject to the police power of the State; but as the State has not declared the business of a pawnbroker unlawful, nor conferred on municipal corporations the power so to do, the city has no power to require a license of pawnbrokers, and the ordinance is void.

From the Allen Circuit Court.

*R. S. Robertson,* for appellant.

*H. Colerick,* for appellee.

COFFEY, J.—This was an action by the appellee against appellant, commenced before the mayor of the city of Fort Wayne, for an alleged violation of a city ordinance.

The appellant interposed a motion before the mayor to quash the affidavit in the cause, which was overruled. Upon a trial he was convicted and adjudged to pay the sum of twenty-five dollars, from which judgment he appealed to the Allen Circuit Court. In this court he renewed his motion to quash, which was overruled, and he excepted. Upon a trial he was again found guilty, and adjudged to pay the sum of fifteen dollars.

From this latter judgment he appeals to this court.

The affidavit in the cause is based upon section seven of

an ordinance of the city of Fort Wayne, which ordinance purports to regulate the business of pawnbrokers.

Section one of the ordinance makes it unlawful for any person to carry on the business of a pawnbroker in said city without having first procured a license so to do.

Section two defines a pawnbroker within the meaning of the ordinance.

Section six makes it the duty of every person engaged in said city as a licensed pawnbroker to keep at his place of business a book in which he shall enter, in writing, a minute description of all personal property received on deposit, or by purchase, the time when it was received, giving particular mention of any prominent or descriptive marks found on the same, together with the name and residence of the person by whom it was left.

Section seven of said ordinance is as follows :

"Section 7. Every person or persons so licensed as aforesaid shall, during the ordinary hours of business, when requested by the mayor, marshal, captain of police, or any police officer of said city, submit and exhibit such books as in the sixth section provided for, to the inspection of said mayor or officer of the police department, and shall exhibit any goods, personal property, bonds, notes or other securities that may be so left with such licensed person, to the inspection of such mayor or officer of the police department, and every such licensed person refusing to submit said books, goods, personal property, bonds, notes or other securities as aforesaid, upon request of the mayor, or any officer of the police department of said city, shall forfeit to the city of Fort Wayne any sum not exceeding one hundred dollars.

The affidavit in this cause charges that the appellant violated section seven, above set out, in refusing to submit to the inspection of the deputy marshal of said city, upon proper request, a certain coat and vest which had been left with him as a pawnbroker.

It is contended by the appellant :

*First.* That the ordinance in question is in contravention of the constitutional privileges of the citizen as reserved in the bill of rights contained in the Constitution of the United States and of the State of Indiana.

*Second.* That there is no legislative enactment which authorizes such an ordinance, and that the ordinance is for that reason void.

The Constitution of the United States provides that " The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." Section 28, R. S. 1881.

This provision is literally copied into our State Constitution. Section 56, R. S. 1881.

Notwithstanding these constitutional provisions it is well settled that the respective States of the Union, and municipal corporations, when the power is conferred by the State, may, in certain cases, prescribe rules and conditions under which a particular business may be carried on, and require a license as a condition precedent to the right to conduct such business. Thus it is held that in the exercise of the police power, municipal corporations may, when empowered by the State, require a license of peddlers, hackmen, draymen, omnibus drivers, retail liquor dealers, showmen, green grocers, billiard saloons, pawnbrokers, and many other occupations. All the authorities agree that the business of the pawnbroker is a proper matter for regulation by the police power.

Cooley, in his valuable work on Constitutional Limitations (6th ed.), p. 744, in discussing the police power, says: " It is also common to require draymen, hackmen, pawnbrokers, and auctioneers to take out licenses, and to conform to such rules and regulations as seem important to the public convenience and protection."

Horr and Bemis, in their work on Municipal Police Or-

dinances, section 213, in a list of cases where it has been held that the police power was properly exercised, include pawnbrokers, and say they may be required to deliver to the police authorities before midnight of each day a list of all articles received that day, together with a description of the pledgeors.

In the case of *Van Baalen* v. *People*, 40 Mich. 258, it was held that a license fee of two hundred dollars required of pawnbrokers in the city of Detroit, as a condition precedent to their right to do business in that city, was not unreasonable.

The case of *Launder* v. *City of Chicago*, 111 Ill. 291, involved substantially the question now under discussion. In that case the city of Chicago passed an ordinance requiring all persons engaged in the business of pawnbrokers to take out a license.

The ordinance required persons engaged in such business to keep a book, similar to the one required by the ordinance now before us, and provided that the same should be subject to the inspection of the police power of the city. It further required all persons engaged in such business to make out and deliver to the superintendent of police, every day, before the hour of noon, a legible and correct copy of such book, showing the personal property or other valuable thing received on deposit or purchased during the preceding day, together with the time (meaning the hour) when received or purchased, and a description of the person or persons by whom left in pledge, or from whom the same was purchased.

The same objection was urged against this ordinance that is urged here, namely, that the citizen was protected in his person, house, papers and effects against unreasonable search. The court, in answer to this objection, said: " We do not regard the ordinance as being ' unjust, unreasonable, tyrannical and oppressive.' The requirements objected to are but reasonable means to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods in their

shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime. * * *

" It is well known that in our great cities thieves and the receivers of stolen property often dispose of the fruits of their crime by sale to second-hand dealers, or by pledge or sale to pawnbrokers, who may be perfectly free from any intention or disposition to aid such criminals. Such an ordinance also has a tendency to protect even such dealers and brokers from imposition and loss."

In view of these authorities we are constrained to hold that the business of the pawnbroker is subject to the police power of the State, and that regulations, such as are contained in the ordinance we are now considering, are not in conflict with the provisions of the Constitution of the United States above set forth.

It remains to inquire whether the State, by proper legislation, has conferred upon the city of Fort Wayne the power to enact the ordinance now before us. The ordinance, in terms, applies only to such pawnbrokers as are licensed by the city to transact business, and has no application to persons not possessing such license, save as it requires all persons to take out a license as a condition precedent to the right to carry on the business of a pawnbroker. We need not inquire, therefore, as to whether such city possesses the power to regulate the business when carried on without a license, as in this case the validity of the ordinance depends upon the right of the city to demand a license, as a condition precedent to the right to do business at all; for if no person can be legally licensed there is no one to whom the ordinance can apply.

It is virtually conceded that section 3106, R. S. 1881, does not in direct terms confer upon cities the right to demand a license of pawnbrokers, and the power to regulate their business. Indeed, in that section no mention is made of this class of business. This section confers upon cities the power

to regulate or prohibit the use of hand-organs, to prevent or prohibit the use of fire arms, to preserve peace and good order, to prevent vice and immorality, to suppress gaming and gaming-houses, and houses of ill-fame, to restrain fraudulent practices in the city, to direct the location of market and slaughter-houses and magazines, to regulate the use of coaches, hacks, drays, and other vehicles for the transportation of passengers or freight, to regulate and license inns, taverns, or other places used or kept for public entertainment, shops or other places kept for sale of liquors to be used in or upon the premises, to regulate and restrain all tables, alleys, machines, devices or places of any kind for sports or games, to regulate and restrain theatrical and other public exhibitions, to restrain and punish vagrants, mendicants, street beggars, etc., to regulate the ringing of bells and crying of goods, and to restrain hawking and peddling, to regulate the establishment of gas-works, to regulate markets, sales of meat, vegetables and fish, to establish stands for hackney coaches, cabs and omnibuses, to regulate the sales of all kinds of property at auction, and to license auctioneers, but no mention whatever is made of the business of pawnbrokers.

The appellee claims that the power to enact the ordinance in question is conferred by section 3155, R. S. 1881, commonly called the general welfare clause. That section provides:

"The common council shall have power to make other by-laws and ordinances not inconsistent with the laws of this State, and necessary to carry out the objects of the corporation, and to enforce the observance of all by-laws and ordinances, by enacting penalties for their violation," etc.

The right to license must be plainly conferred or it will not be held to exist. 1 Dillon Mun. Corp. (4th ed.), section 361.

To license one means to confer upon him the right to do

something which he would not have the right to do without such license.

The object of a license is to confer a right which does not exist. Tiedeman Limitations of Police Power, p. 285; *Mayor, etc.,* v. *Charlton,* 36 Ga. 460; *Chilvers* v. *People,* 11 Mich. 42.

"The power to license must be granted in express terms, although it is merely a police power. It is one mode of regulation, but one that can not be exercised under general police authority. But a grant of power to control or suppress would carry with it the power to license." Horr and Bemis Mun. Police Ordinances, section 256.

" The power to license depends upon the concurrent power to prohibit. The business or occupation is declared unlawful, except upon compliance with certain conditions. A license, then, 'is a privilege granted to carry on some occupation or exercise some right which could not be legally exercised without the grant of such license. The pursuit of the prohibited occupation becomes a franchise in the power of the municipality to grant, and the license fee is the price exacted for the right to exercise the franchise." Horr and Bemis , Mun. Police Ordinances, section 257; *Chilvers* v. *People, supra.*

In *Barling* v. *West,* 29 Wis. 307, it was held that the " general welfare " clause, in a statute like ours, does not authorize the imposition of a license for engaging in a lawful business.

Our State has not seen fit to declare the business of a pawnbroker unlawful, nor has it conferred on municipal corporations the power to declare it unlawful. Any person desiring to do so may engage in the business until such time as the Legislature, in its wisdom, may, in the exercise of the police power of the State, declare it unlawful.

As it was not unlawful for the appellant to engage in the business of a pawnbroker in the city of Fort Wayne, and as that city, under existing laws, had no power to prohibit him

from doing so, it follows, we think, that it had no power to require of him a license as a condition precedent to the carrying on of such business.

All licenses are in their nature restrictive, and a municipal corporation can not restrict a lawful business unless the power to do so is conferred by the State.

The whole ordinance before us proceeds upon the theory that cities have the right to demand of pawnbrokers that they shall take out licenses as a condition precedent to the right to do business. In all the States where it has been held that a city may demand a license of pawnbrokers, the authority to do so was expressly conferred by statute. Without approving all that is said in the authorities above cited upon the subject of privileges granted by a license, we are of the opinion that the ordinance now under consideration is void, and the court, for that reason, erred in overruling the appellant's motion to quash the affidavit.

Judgment reversed, with direction to the circuit court to sustain the motion of the appellant to quash the affidavit in this cause and to dismiss the action.

