**James Willie POINDEXTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52082.**

Court of Criminal Appeals of Texas.

Jan. 19, 1977.

Clarke Gable Ward, Houston, on appeal only, for appellant.

Carol S. Vance, Dist. Atty., Phyllis M. Bell and Jim C. Ezer, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of unlawful sale of amidone, a narcotic drug, in violation of Article 725b, V.A.P.C. (1925). The punishment is imprisonment for 45 years.

The appellant, a pharmacist, was convicted for the sale of the drug to an undercover agent. The agent obtained the drug from the appellant after presenting to him a purported prescription which did not meet the requirements for a lawful prescription. The appellant asserts that the judgment of conviction should be reversed because it is supported by evidence which was obtained by an unlawful search and seizure. The purported prescription, State's Exhibit No. 6, and many other exhibits of the same nature were seized in a pharmacy operated

---

by the appellant. The law enforcement officers who seized State's Exhibit No. 6 and the other evidence did not have a search warrant or the consent of the appellant to enter the locked premises where the evidence was found and seized. The State urges that the evidence about which complaint is made was lawfully obtained by officers under the provisions of Articles 725b and 726d, V.A.P.C. (1925),[1] and a court order which they say is authorized by these statutes.

On January 25, 1973, acting on information from an informer, Houston Police Officer F. C. Miller, who was working as an undercover agent, went to the office of Dr. Samuel George for the purpose of obtaining a prescription for Dolophine; Dolophine is a trade name for amidone. After a consultation with and an examination of Miller in which the receptionist only checked his heartbeat, Dr. George gave Miller a piece of paper that was to serve as a prescription for Dolophine. The purported prescription was undated and unsigned; it did not have the address of the patient and for other reasons did not meet the statutory requirements for a lawful prescription under Article 725b, Sec. 6(1), V.A.P.C. (1925). Miller was instructed to have the purported prescription filled at appellant's pharmacy located in the same building. Miller took the purported prescription to the police station, made copies of it, and then returned to appellant's pharmacy. Miller presented the purported prescription to appellant who also asked for the receipt Miller received from Dr. George for Dr. George's services. After Miller produced the receipt, appellant sold Miller the Dolophine.

 Regis DeArza testified that he was an officer with the Department of Public Safety Narcotics Service. He stated that his duty was to enforce the narcotic drug regulations and to conduct audits of the records required to be kept by law. DeArza testified that he and several other officers arrested the appellant on May 7, 1973, pursuant to a capias issued after appellant was indicted by a grand jury for the sale of the drug to Miller. Appellant was arrested at his pharmacy and at that time a search was made of appellant's prescription records; however, no records were confiscated. On May 8, 1973, DeArza talked to the appellant at the Harris County Jail where he was being held. DeArza informed appellant that he was going to conduct an audit of his records. When appellant refused to allow the officers to search his prescription records, the officer and an assistant district attorney obtained an order from a judge of a District Court of Harris County purporting to authorize a search of the appellant's pharmacy. The officer returned to the jail and showed the appellant the order. After he called his attorney, the appellant stated that he did not want to return with the officers to the pharmacy and would not let them in. The officers then contacted a police officer who went with them and picked the lock to appellant's pharmacy. Officer DeArza seized several hundred of appellant's prescription records and examined them over a period of several weeks. State's Exhibit No. 6, the original purported prescription that Officer Miller presented to the appellant on January 25, 1973, was obtained as a result of this search. State's Exhibit No. 6 was admitted into evidence over appellant's timely objection that it was obtained as a result of a search in violation of the Fourth Amendment.[2]

The State argues that the order obtained from the judge of the District Court was based on former penal code Article 726d,

---

1. Art. 725b, V.A.P.C. (1925) was repealed by Acts 1973, 63rd Leg., p. 1165, ch. 425, Sec. 6.02, effective August 27, 1973. Art. 726d, V.A.P.C. (1925) was amended and transferred to Art. 4476–14, V.A.C.S., effective August 27, 1973.

2. Although the State argues that the error may not have been preserved, we find that it was. The State argues that the appellant's motion to suppress was "very broadly stated" and specific objections were not made to the admission of State's Exhibit No. 6. The hearing on the motion to suppress was held out of the presence of the jury, on the day of trial. There was extensive testimony and argument of counsel. The grounds for the appellant's objection are unmistakable and were sufficient to preserve the error now urged on appeal.

Sec. 6, and Article 725b, Sec. 15, and that it authorized the officers to enter appellant's pharmacy "for the purpose of examining, inspecting, and copying all records there found relating to barbiturates, narcotic drugs, amphetamines and other hypnotic drugs." The order would not serve as a search warrant since it was not based on an affidavit and did not comply with statutory requirements. See Article 18.01, et seq., V.A.C.C.P. The facts do not show a search by consent; on the contrary the facts show the appellant protested against a search even after the officers had obtained the order from the District Court.

The United States Supreme Court's decisions in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), holding that administrative searches were subject to the warrant requirement of the Fourth Amendment, have been narrowed by the later cases of *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In *Colonnade*, supra, the Supreme Court dealt with statutory authorization for a warrantless inspection of a federally licensed dealer in alcoholic beverages. There, federal inspectors had forcibly entered a locked storeroom and seized liquor without the owner's consent and without a warrant. The court emphasized the historically broad authority of the Government to regulate the liquor industry and concluded that Congress had ample power to provide for inspection laws. However, the Court found that Congress had not expressly provided for forcible entry in the absence of a warrant and instead had provided a remedy of enforcement by making it a criminal offense to refuse admission to the inspector.

In *United States v. Biswell*, supra, the Court was concerned with administrative inspection laws governing a federally licensed firearms dealer. There, the Court stated that while federal regulation of the interstate firearms traffic was not as deeply rooted in history as regulation of the liquor industry, close scrutiny of this traffic is of central importance to federal efforts to prevent violent crime and assist the States in regulating the firearms traffic within their borders. If this regulation is to be properly enforced and inspection made effectively, the Court stated that inspection without a warrant must be deemed reasonable official conduct under the Fourth Amendment. Therefore, a firearms dealer who chooses to engage in this pervasively regulated business and accept a federal license does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection.

The Supreme Court held in both *Colonnade* and *Biswell* that the administrative search statutes were valid; however, the search conducted in *Colonnade* was unlawful while the search in *Biswell* was valid. The distinction pointed out was that in *Colonnade* Congress had not expressly provided for forcible entry in the absence of a warrant and had instead given Government agents a remedy by making it a criminal offense to refuse admission to the inspectors under 26 U.S.C. Sec. 1342. In *Biswell* the search was not accompanied by any unauthorized force; the administrative search conducted there was specifically authorized by the statute and there was at least acquiescence, if not consent to the search.

Here, we are concerned with a state statute regulating narcotics and dangerous drugs. There is no doubt that the states have just as great an interest in regulating the pharmaceutical industry and controlling the illicit use of drugs as the federal government has in regulating the liquor and firearms industry. *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2nd Cir. 1974). Therefore, the issue is whether the statutes in effect on the date in question authorized the search conducted of appellant's prescription records.[3]

3. The procedures for administrative inspection have been significantly changed by Art. 4476–15, V.A.C.S., the Controlled Substances Act and we express no opinion on the new procedure at this time. Also, see and compare, 21 U.S.C. Section 880.

Article 726d, Sec. 6, V.A.P.C. provided:

"Persons required to keep files or records relating to barbiturate or other hypnotic drugs, as well as those drugs set forth in Section 2(a)(2) hereof, by Section 5 shall, upon the written request of an officer or employee duly designated by the State Board of Pharmacy:

"(1) Make such files or records available to such officer or employee, at all reasonable hours, for inspection and copying; and

"(2) Accord to such officer or employee full opportunity to make inventory of all stocks of barbiturates or other hypnotic drugs, as well as those drugs set forth in Section 2(a)(2) hereof, on hand; and it shall be unlawful for any such person to fail to make such files or records available or to accord such opportunity to check their correctness."

Article 725b, Sec. 15, V.A.P.C. provided:

"Officers and employees of the Department of Public Safety, and all peace officers who have authority to, and are charged with the duty of enforcing the provisions of this Act, shall have power and authority, without warrant, to enter and examine any buildings, vessels, cars, conveyances, vehicles, or other structures or places, when they have reason to believe and do believe that any or either of same contain narcotic drugs manufactured, bought, sold, shipped, or had in possession contrary to any of the provisions of this Act, or that the receptacle containing the same is falsely labeled, except when any such building, vessel, or other structure is occupied and used as a private residence, in which event, a search warrant shall be procured as hereinbelow provided.

"Said officers and employees of the Department of Public Safety and all peace officers who have authority to, and are charged with the duty of enforcing the provisions of this Act, shall further have power and authority, without warrant, to open and examine any box, parcel, barrel, package, or receptacle in the possession of any person which they have reason to believe, and do believe contain narcotic drugs manufactured, bought, sold, shipped, or had in possession contrary to any of the provisions of this Act and that the receptacle containing same is falsely labeled.

"Officers and employees of the Department of Public Safety and peace officers who have authority to, and are charged with the duty of enforcing the provisions of this Act, when acting under circumstances and conditions where a search or inspection is authorized without a warrant, as immediately hereinabove provided shall be given free access to and shall not be hindered or interfered with in their examination of buildings, vessels, cars, conveyances, vehicles, or other structures or places, and in case any officer or employee of the Department of Public Safety is hindered or interfered with in making such examination, *any license* held by the person preventing such free access or interfering or hindering such officers, employees, or employee, *shall be subject to revocation by the Department of Public Safety.* (Emphasis added.)

"Officers and employees of the Department of Public Safety and all peace officers who have authority to, and are charged with the duty of enforcing the provisions of this Act, shall have authority to take into their possession any and all narcotic drugs found by them as a result of any search or inspection without a warrant, as authorized by this Section of this Act provided that said officers shall be required to issue to the person from whose possession said narcotics are taken a receipt therefor if said person is present and to immediately file a sworn inventory of all narcotic drugs taken with any magistrate in the county where said narcotic drugs are taken, and the retention and disposition of said narcotic drugs so taken by any said officer shall, after coming into his possession, be controlled

by the applicable provisions of Section 16 hereof."

Article 726d, Sec. 6, V.A.P.C. authorized inspection of records and files upon the written request of an officer duly designated by the State Board of Pharmacy. While the record reflects that one of the officers who accompanied DeArza was with the Board of Pharmacy, the record does not show that the officer was duly authorized by the Board of Pharmacy to conduct the inspection or that such officer presented a written request for inspection as required by Article 726d, Sec. 6, supra. In addition, that statute provided for a criminal penalty for pharmacists or other persons who are required to keep records if they failed to make the records available.[4]

Article 725b, Sec. 15, V.A.P.C. was overly broad in that it authorized *all* peace officers to search without a warrant *anything* which they had reason to believe contained narcotic drugs in possession contrary to the Act. *Colonnade Catering Corp. v. United States,* supra. Also, this statute does not specifically authorize inspection of *records* and files. The section also authorized the revocation of any license as a means of enforcing this section just as the statute did in *Colonnade.* Moreover, Article 725b, Sec. 16, provided for the issuance of search warrants which comply with the requirements of the Code of Criminal Procedure.

■ The search of appellant's prescription records was not by consent; in *Biswell* the search was with consent. Here, the officers were forced to pick the lock of appellant's pharmacy door. The district court order cannot be treated as a search warrant since it was not based on a sworn affidavit setting forth facts showing probable cause as required by Article 18.01, et seq., V.A.C.C.P. The officers may have shown good faith in obtaining the court order, but we find no authority for the issuing of an order such as that which was obtained.

The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The requirement of an affidavit is not a mere "technicality." Our Constitution requires that an independent magistrate determine probable cause based on facts set forth and sworn to. The Supreme Court stated in *Colonnade* that:

" . . . In *See* we reserved decision on the problem of 'licensing programs' requiring inspection, by saying they can be resolved 'on a case-by-case basis under the general Fourth Amendment standards of reasonableness.' Id., [387 U.S.] at 546, 87 S.Ct., at 1741.

"Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply."

See also Article 1, Sec. 9, Texas Constitution.

■ Therefore, we hold that the statutes in effect at the time of the search did not authorize the type of search conducted. The evidence obtained as a result of this search should have been suppressed.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

---

4. The State relied heavily on the provisions of Article 726d, V.A.P.C., and we are giving it consideration. However, in this case we are dealing with narcotics and Article 726d, V.A. P.C. dealt with dangerous drugs rather than narcotics.