Amos J. HARRIS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 54827–54829.

Court of Criminal Appeals of Texas,
En Banc.

May 3, 1978.

David B. Bonham, Nederland, on appeal only, for appellant.

Tom Hanna, Dist. Atty. and John R. DeWitt, Asst. Dist. Atty., Beaumont, for the State.

## OPINION

ROBERTS, Judge.

These are appeals from two convictions for delivery of marihuana [Cause No. 32031 in Jefferson County (our Cause No. 54,827) and Cause No. 32205 in Jefferson County (our Cause No. 54,829)] and one conviction for delivery of lysergic acid diethylamide [Cause No. 32035 in Jefferson County (our Cause No. 54,828)]. The appellant pleaded guilty to all three indictments and upon the

appellant's motion, the pleas of guilty were consolidated and a jury was empaneled to assess punishment in all three cases. The jury assessed the appellant's punishment at ten years in both Cause No. 54,827 and Cause No. 54,829, and fifteen years in Cause No. 54,828.

The appellant contends that the two indictments for delivery of marihuana were fundamentally defective and that the trial judge erred by allowing the prosecutor to introduce a tape recording to impeach the appellant. We reverse the judgments in Cause Nos. 54,827 and 54,829 and affirm and reform the judgment in Cause No. 54,-828.

The evidence reveals that during 1974 the appellant worked in the Jefferson Chemical Plant in Port Neches. During October, 1974, Jerry Henderson, an acquaintance of the appellant's, introduced the appellant to Linda Sonnier Fisher, who was also employed in the plant. When the appellant was introduced to Fisher, he apparently told her that he could get her any kind of drugs she wanted.

Fisher, who was working with the plant's security division to locate drug traffickers in the plant, received a tablet from the appellant at the plant on November 1, 1974. Fisher gave it to a Mr. Fults in the plant's safety office. Fults had the tablet analyzed and the analysis showed that it contained lysergic acid diethylamide.

On December 14, 1974, the appellant and Fisher met at the Mohawk Bowling Lanes. Fisher was under constant surveillance by Officer Victor Gonzales of the Jefferson County Sheriff's Office. According to Fisher, the appellant told her that he could not deliver her request for any "pills," but he could get her marihuana. Fisher agreed that marihuana would suffice. Fisher and the appellant left the bowling alley separately, but later the same day they met there again. At that time, the appellant gave Fisher a baggie of marihuana.

Finally, on December 20, 1974, the appellant delivered a box with pills and a baggie of marihuana to Fisher at the plant. The appellant was arrested by Officer Gonzales at that time.

The defensive evidence attempted to establish that the appellant agreed to get drugs for Fisher in return for Fisher's assistance in procuring a job at the plant for the appellant's brother-in-law. The appellant testified that he never took drugs and that he had sold drugs only to Fisher and only at the price he had paid for them.

■ The appellant's first two contentions deal with the indictments for delivery of marihuana [our Cause Nos. 54,827 and 54,-829]. Although the two indictments allege that the delivery of marihuana occurred on two separate dates, both indictments state that the appellant ". . . did then and there knowingly and intentionally deliver to Linda Sonnier marihuana."

The appellant contends, and the State concedes that the indictments are fundamentally defective.

Vernon's Ann.Civ.St., Article 4476–15, Section 4.05—the Texas Controlled Substances Act—provides for offenses involving the possession and delivery of marihuana. Specifically, Section 4.05(d), (e) and (f) state:

"(d) Except as otherwise provided by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

"(e) Except as provided in Subsection (f) of this section, an offense under Subsection (d) of this section is a felony of the third degree.

"(f) An offense under Subsection (d) is a Class B misdemeanor if the actor delivers one-fourth ounce or less without receiving remuneration."

In *Suarez v. State*, 532 S.W.2d 602, 603 (Tex.Cr.App.1976), we stated:

"The proper interpretation of these statutory provisions is that (1) delivery of more than one-fourth ounce of marihuana is a felony of the third degree regardless of whether the delivery was for remuneration; (2) the delivery of any amount of marihuana for remuneration is a felony of the third degree; and (3) the delivery

of less than one-fourth ounce of marihuana without remuneration is a Class B misdemeanor."

Neither of the instant indictments allege the quantity of marihuana delivered or whether the delivery was for remuneration. Neither indictment alleges a felony offense, but both indictments allege offenses punishable as Class B misdemeanors.

■ Accordingly, the judgments in Cause Nos. 54,827 and 54,829 are reversed and the causes remanded to the trial court to be transferred to a court having jurisdiction of the misdemeanor offense of delivery of marihuana. Article V, Section 17, Texas Constitution; Article 21.26, Vernon's Ann. C.C.P.[1] The appellant's first and second grounds of error are granted.

■ The appellant's third contention is that the trial judge committed reversible error by permitting the prosecutor to introduce into evidence a tape recording of a conversation between the appellant and Linda Sonnier Fisher.

After the State rested its case in chief, the appellant testified. During the prosecutor's cross-examination of the appellant, the prosecutor asked the appellant: (1) if he ever asked Fisher to go to bed with him; (2) if he ever asked Fisher to "shack-up" with him; and (3) if he ever asked Fisher to "curl up" with him. The appellant responded in the negative in each instance.

After the defense rested, the State called Fisher as a rebuttal witness. The prosecutor established that on December 10, 1974, Fisher and the appellant had a telephone conversation and that Fisher had tape recorded that conversation. Fisher identified the tape cassette, but the appellant stated that:

"Your Honor, I'm going to object to the listening of the tape because the proper predicate has not been laid."

The trial judge overruled the objection and the following was heard by the jury:

"(Male voice) 'Hello.'

"(Female voice) 'Rabbit?' [the appellant's nickname]

"(Male voice) 'Yeah.'

"(Female voice) 'What're you doing?'

"(Male voice) 'Laying down.'

"(Female voice) 'Don't you work evenings?'

"(Male voice) 'Uh, huh.'

"(Female voice) 'You better get up and get with it.'

"(Male voice) 'Why don't you come with me?'

"(Female voice) 'No Thanks. I'll pass this time. Hey, listen, can you get that stuff for me?

"(Male voice) 'Huh?'

"(Female voice) 'Can you get that stuff for me?'

"(Male voice) 'I won't be able to get it today.'

"(Female voice) 'When can you get it?'

"(Male voice) 'Probably Friday, when I have some money.'

"(Female voice) 'About how much?'

"(Male voice) 'Costs about $2.00 a piece.'

"(Female voice) '$2.00 a piece? How many can you get me?'

"(Male voice) 'How many—you know—how many you want?'

"(Female voice) 'As many as possible.'

"(Male voice) 'Yeah?'

"(Female voice) 'I want to get stored up.'

"(Male voice) 'Yeah.'

"(Female voice) 'Yeah, it's pretty good stuff.'

"(Male voice) "Uhmm, Hummm.'

"(Female voice) 'Can you get me about four?'

"(Male voice) 'Yeah.'

"(Female voice) 'Me and this girlfriend are going to make our trip to Houston.'

"(Male voice) 'Y'all didn't go the other day?'

"(Female voice) 'No, we couldn't. A bunch of stuff came up with my parents so I didn't get to go anywhere, but this weekend coming I don't have any kids, so—'

"(Male voice) 'Come shack up with me if you want.'

---

1. Of course, our disposition of these cases does not preclude reindictment by the State.

"(Female voice) 'No, I'll pass this time.'

"(Male voice) 'Okay.'

"(Female voice) 'Uh, no, we're gonna go to a party and we want to have a little stuff with us.'

"(Male voice) 'Okay.'

"(Female voice) 'I figure two of 'um would do us.'

"(Male voice) 'Why don't you come curl up with me one time, you know, get high, and everything?'

"(Female voice) 'Well, we'll see.'

"(Male voice) 'Okay.'

"(Female voice) 'Okay.'

"(Male voice) 'We'll have some stuff then.'

"(Female voice) 'Huh?'

"(Male voice) 'I said, we'll have some stuff then.'

"(Female voice) 'See if you can't get that stuff for me Friday.'

"(Male voice) 'Okay.'

"(Female voice) 'And I'll have you some money.'

"(Male voice) 'Okay. You want me to pass around there when I come to work?'

"(Female voice) 'Yeah.'

"(Male voice) 'Okay.'

"(Female voice) 'Okay, bye, bye.' ' "

Although there was evidence that the appellant went by the name "Rabbit," there was no testimony as to whose voices were in fact on the tape after the tape was in fact played.

The appellant challenges the admissibility of the tape recording on the basis that a proper predicate had not been laid.

In *Edwards v. State*, 551 S.W.2d 731 (Tex.Cr.App.1977), we dealt with what constituted a proper foundation for the admission of a sound recording. We there noted that the defendant

"relies on *Cummings v. Jess Edwards, Inc.*, 445 S.W.2d 767 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.) which sets out a seven-pronged predicate recommended in 58 A.L.R.2d 1024, 'Admissibility of sound recordings in evidence.' Sec. 2, pp. 1027–8, as follows:

'* * * The cases are in general agreement as to what constitutes a proper foundation for the admission of a sound recording. They also indicate a reasonably strict adherence to the rules prescribed for testing the admissibility of recordings, which have been outlined as follows: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' "

We went on to state:

"We hold that the requirements as set out above are applicable in criminal trials as well. However, we also find that at least some of the requirements can be inferred from the testimony and need not be shown with the same particularity required for admission of other mechanically acquired evidence, such as the results of a breathalyzer test."

Since we there held that some of the requirements can be *inferred* from the testimony, the issue of whether the appellant's objection was sufficiently specific to preserve error must be considered.

In *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977), we stated:

"The generally acknowledged policies of requiring specific objections are two-fold. First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it.[1] Second, a spe-

[1] "A collateral but important ramification of this function is to provide the trial court with an opportunity to attempt to cure any harm resulting from the action giving rise to the objection. *Coleman v. State*, 481 S.W.2d 872 (Tex.Cr.App.1972) and cases cited therein."

cific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony. McCormick, Handbook of the Law of Evi-

dence, Sec. 52, p. 113, 115 (2d ed. 1972); 4 Jones, The Law of Evidence, Sec. 28:2, p. 276 (6th ed. 1972)."

In the present case, the appellant did not inform the trial judge of which of the seven requirements the prosecution had not satisfied. The prosecutor was not put on notice of which the seven requirements he had failed to satisfy. We hold that the objection was too general to preserve error. *Boss v. State*, 489 S.W.2d 582 (Tex.Cr.App. 1973); *Bennett v. State*, 394 S.W.2d 804 (Tex.Cr.App.1965). Appellant's third contention is overruled.

Our review of the record has revealed that the jury assessed the appellant's punishment at fifteen years in Cause No. 32035 (our Cause No. 54,828). The judgment and sentence in Cause No. 32035 (our Cause No. 54,828) both reflect that the jury only assessed the appellant's punishment at ten years. Therefore, the judgment and sentence are ordered reformed to show that the jury assessed the appellant's punishment at fifteen years.

The judgments in Cause Nos. 32031 and 32205 (our Cause Nos. 54,827 and 54,829) are reversed and the causes remanded for proceedings consistent with this opinion. The judgment and sentence in Cause No. 32035 (our Cause No. 54,828) are ordered reformed, and as reformed, are affirmed.