Ted KIPPERMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 60363.

Court of Criminal Appeals of Texas,
En Banc.

June 24, 1981.

Rehearing Denied Sept. 23, 1981.

Lloyd Lunsford, South Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and William Camp, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for refusal to allow a peace officer to examine and make copies of the books, accounts, papers, correspondence and records of a licensed pawnshop in violation of Art. 5069–51.08, V.A.C.S. (Supp.1978) of the Texas Pawnshop Act. Punishment, as provided in Art. 5069–51.17(d), V.A.C.S. (Supp.1978), is a fine of $500.00.

The appellant argues that: Art. 5069–51.-08, supra, is unconstitutional; his motion to quash the indictment should have been granted; the trial court erred in admitting certain documentary evidence.

The appellant is the proprietor of Ted Kipperman's Pawnshop in Houston. He was convicted for refusing to allow Houston police officer T. T. Grubbs to inspect his pawnshop records. Officer Allen Rockwell of the burglary and theft division of the Houston Police Department testified that he and Officer W. H. Elliott went to appellant's pawnshop at approximately 1:00 p.m. on March 23, 1977. Rockwell identified himself to appellant as a Houston police officer and requested to examine the records. When the appellant refused him permission to do so without a search warrant, Officer Elliott telephoned other police officers, including Officer T. T. Grubbs, who arrived approximately thirty minutes later. Officer Grubbs testified that he identified himself to the appellant, and that he was also refused permission to inspect the pawnshop records without a warrant. The appellant was then arrested for violation of the Pawnshop Act, and the officers inspected the shop's records with the cooperation of an employee of the shop. Officer Elliott, who also testified to these events, explained that he wanted to examine appellant's records in order to "confirm who had either sold or pawned different pieces of property that the fence detail was working with."

The appellant testified that it was his practice to keep copies of all his pawnshop tickets for the police; that Officer Ira Holmes was the Houston police officer who customarily collected these copies of the pawn tickets every Tuesday; the appellant had found the procedure "a very satisfactory method." He explained that when Officer Grubbs entered his pawnshop, he was dressed in blue jeans, had long hair, and did not appear to be a police officer nor did he show appellant he was. He stated that he had never refused to show the police his records.

Art. 5069–51.08, supra, under which the appellant was convicted, provides:

"At such times as the [Consumer Credit] Commissioner may deem necessary, the Commissioner, or his duly authorized representative, may make an examination of the place and business of each licensee and may inquire into and examine the transactions, books, accounts, papers, correspondence and records of such licensee insofar as they pertain to the business regulated by this Act. *Such books, accounts, papers, correspondence and records shall also be open for inspection at any reasonable time by any peace officer, without need of judicial writ or other process.* In the course of an examination, the Commissioner or his duly authorized representative shall have free access to the official place of business, files, safes, and vaults of such licensee, and shall have the right to make copies of any books, accounts, papers, correspondence and records. The Commissioner or his duly authorized representative may, during the course of such examination, administer oaths and examine any person under oath upon any subject pertinent to any matter about which the Commissioner is authorized or required by this Act to consider, investigate, or secure information. *Any licensee who fails or refuses to let the Commissioner or his duly authorized representative or any peace officer examine or make copies of such books, or other relevant documents, shall thereby be deemed in violation of this Act ...*"

The appellant contends that the emphasized portions of the statute, which authorize warrantless inspections by "any peace officer" and make it an offense to refuse such inspections, contravene the Fourth Amendment to the United States Constitution, and Art. I, Sec. 9 of the Texas Constitution.

Appellant relies on the United States Supreme Court decision *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), where it was stated that:

"administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of the warrant procedure."

387 U.S. at 545, 87 S.Ct. at 1740, 18 L.Ed.2d 943.

However, this general holding has since been modified by the Court's decisions in *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), which held that administrative searches of certain closely regulated businesses are excepted from the warrant procedure.

In *Colonnade Catering Corp. v. United States*, supra, the Court addressed a federal statute authorizing warrantless inspection of federally licensed dealers in alcoholic beverages. There the petitioner disputed the validity of the warrantless seizure of liquor by federal inspectors who had forcibly entered his locked storeroom without his consent. The Court found that Congress had the power to provide statutory authority for warrantless inspections, emphasizing the historically broad power wielded by the federal government in the liquor industry "long subject to close supervision and inspection." The Court held that the general rule in *See* did not apply in these circumstances, but found the search invalid absent express Congressional provision for forcible entry without a warrant. The Court determined that the enforcement remedy provided by Congress was simply to make refusal to admit an inspector a criminal offense.

In *United States v. Biswell*, supra, the Court dealt with the Gun Control Act of 1968, which authorized warrantless inspections of federally licensed firearms dealers. Biswell, a pawnshop operator who was federally licensed to deal in sporting weapons, permitted a Federal treasury agent to conduct a warrantless inspection of his premises after being informed of the agent's statutory authority to do so. Based on the agent's discoveries in this inspection, Biswell was convicted of dealing in firearms without having paid a required tax. The Court held that, as in *Colonnade*, Congress had the power to authorize warrantless inspection. The Court stated that although federal regulation of the interstate traffic

of firearms is not as deeply rooted in history as regulation of the liquor industry, close scrutiny of this traffic is central to federal efforts to prevent violent crime and to assist the States to regulate firearms traffic within their borders. Inspection is crucial; it assures traceable distribution of weapons and facilitates prevention of sales to certain persons. The Court stated that if the law is to be properly enforced and inspection made effective, warrantless inspections must be deemed reasonable official conduct under the Fourth Amendment. Furthermore, the Court found that warrantless inspections would pose only limited threats to the dealer's justifiable expectation of privacy, since:

> "When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection."

406 U.S. at 316, 92 S.Ct. at 1596, 32 L.Ed.2d 87.

The holdings in *Colonnade* and *Biswell* were further clarified by the decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). There the Court found the Occupational Health and Safety Act of 1970 was unconstitutional insofar as it purported to authorize warrantless inspections of any employment facility of a business involved in interstate commerce. The Court distinguished *Colonnade* and *Biswell*, stating:

> "Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise. Liquor (*Colonnade*) and firearms (*Biswell*) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.
>
>    \*    \*    \*    \*    \*    \*
>
> "... The element that distinguishes these enterprises from ordinary businesses is a long tradition of close governmental supervision of which any person who

chooses to enter such a business must already be aware '... The businessman in a regulated industry in effect consents to the restrictions placed upon him.' *Almeida-Sanchez v. United States,* 413 U.S. 266, 271, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 569 (1973)."

436 U.S. at 313, 98 S.Ct. at 1821, 56 L.Ed.2d 305.

In Texas, pawnshops have long been the subject of close governmental supervision. See Tex.Laws 1874, Ch. CVII, Sec. 1, et seq., at 153, 8 H. Gammell, Laws of Texas 155 (1898); Tex.Rev.Civ.Stat. art. 3494, et seq. (1879); Tex.Rev.Civ.Stat. art. 3636 et seq. (1895); Tex.Civ.Stat. art 6155, et seq. (1914); Tex.Rev.Civ.Stat.Ann. art. 6146 et seq. (1962). See also *Juhan v. State,* 216 S.W. 873 (Tex.Cr.App.1919). Aspects of this regulation, now embodied in the Texas Pawnshop Act, are designed to address the consumer credit issues of the pawnbrokerage business, and the Consumer Credit Commissioner is given the statutory authority to promulgate regulations in this area, issue and revoke licenses, and monitor compliance with the Act.

The appellant relies on these aspects of the regulation, and the authority vested in the Commissioner, to contend that authorization of warrantless inspections by "any peace officer" is unconstitutionally broad. However, a review of statutory regulation of the pawnbrokerage business reveals that it has never been limited to the consumer credit aspects of the business; beginning in 1874, pawnbrokers have been required by statute to register their transactions in a "book or registry" to be "kept open for inspection." See Tex.Laws 1874, ch. CVII, sec. 1 at 153, 8 H. Gammell, Laws of Texas 155 (1898). The details of the transactions to be recorded in the book and on the pawn ticket have long been regulated by statute.

The governmental interest in providing for such supervision of pawnshop activities has also long been recognized. In 1884, the Illinois Supreme Court stated:

> "It is well known that in our great cities thieves and the receivers of stolen property often dispose of the fruits of their

crime by sale to second hand dealers, or by pledge or sale to pawnbrokers, who may be perfectly free from any intention or disposition to aid such criminals. Such an ordinance [requiring pawnbrokers to keep a book subject to police inspection and to provide the police with daily updates of transactions] also has a tendency to protect even such dealers and brokers from imposition and loss."

*Launder v. Illinois*, 111 Ill. 291 (1884), cited in *Shuman v. Ft. Wayne*, 127 Ind. 109, 26 N.E. 560 (1891). See *Medias v. Indianapolis*, 216 Ind. 155, 23 N.E.2d 590 (1939), overruled in part on other grounds, *City of Indianapolis v. Sablica*, 264 Ind. 271, 342 N.E.2d 853 (1976). See generally, Annot. 125 A.L.R. 598 (1949).

In *Liberman v. Cervantes*, 511 S.W.2d 835 (Mo.1974) a panel of the Missouri Supreme Court upheld a municipal ordinance requiring licensed pawnbrokers to furnish photographs of their customers to the police on request, stating:

"This business is one of a class where the strictest police regulation may be imposed. 54 Am.Jur.2d Moneylenders and Pawnbrokers § 3, p. 597. The requirement of photographs is reasonably connected with the object and purpose of the ordinance as a whole, which is 'to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods in their shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime.' Idem, 31 S.W. 1 c. 103; 54 Am.Jur.2d Moneylenders and Pawnbrokers, § 5, p. 600. This requirement is akin to the requirement that pawnbrokers' records be kept, produced and opened for inspection by designated public officials, *upheld because it has a direct relation to the prevention of crime and the detention and apprehension of criminals*, 54 Am.Jur.2d Moneylenders and Pawnbrokers § 5, p. 600 ...."

511 S.W.2d at 837 [emphasis supplied.]

The ordinance was again challenged on constitutional grounds in *City of St. Louis v. Liberman*, 547 S.W.2d 452 (Mo.banc. 1977), cert. denied 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977). The court en banc reaffirmed the holding in *Liberman v. Cervantes*, supra, and held that the requirements of the ordinance that the pawnbrokers' records be kept and available for examination by police officers, and that photographs be furnished, did not infringe on the constitutional guarantee against searches and seizures.

The same considerations which were noted by the Supreme Court in *Biswell* in the context of inspections under the Gun Control Act also apply to inspections of pawnshop records to detect and deter the disposition of stolen merchandise and identify those responsible:

"[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisites of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible."

406 U.S. at 316, 92 S.Ct. at 1596, 32 L.Ed.2d 87.

We hold that the State's concerns with the detection of stolen property and the prevention of theft are no less important than the federal interests in the prevention of violent crimes and regulations of firearms traffic (*Biswell*), and in the regulation of the liquor industry (*Colonnade*). The inspection of the business records of State licensed pawnshops is essential to the State's efforts to effectively deter theft and minimize its consequences, just as the inspection of federally licensed liquor and firearms dealers is central to federal efforts to control the possible abuses in those industries. In light of the important governmental interests furthered by the regulatory inspections of pawnshop records, and the limited threat these inspections pose to the reasonable expectations of privacy of businessmen choosing to enter this closely regulated business, we conclude that Art. 5069–51.08 of the Texas Pawnshop Act does not authorize searches in violation of either the

Fourth Amendment to the United States Constitution or Art. I, Sec. 9 of the Texas Constitution. *Biswell v. United States*, supra; *Colonnade v. United States*, supra. See also *City of St. Louis v. Liberman*, supra.

The appellant's reliance on *Poindexter v. State*, 545 S.W.2d 798 (Tex.Cr.App.1977) is misplaced. *Poindexter* dealt with the validity of a search conducted under Art. 725b, Sec. 15, V.A.P.C. (1925)[1] which had purported to authorize warrantless searches for unlawfully possessed narcotics. As in *Colonnade*, officers acting without a warrant and without consent had forcibly entered the premises to be searched, although the statute authorizing warrantless inspections made no provision for forcible entry as an enforcement remedy. As in *Colonnade* it was held in *Poindexter* that the search was not authorized by the statute, and the evidence seized was not admissible. The Court in *Poindexter* also determined that Art. 725b, Sec. 15, supra, was overly broad; it purported to authorize warrantless inspections of "any buildings, vessels, cars, conveyances, vehicles or other structures or places ..." which officers had reason to believe contained unlawfully possessed narcotic drugs.

Art. 5069–51.08, supra, is distinguishable; warrantless inspections under its authority are limited to "books, accounts, papers, correspondence and records" of pawnshops, licensed to transact business in a closely regulated occupation, and these items must "pertain to the business regulated by [the Texas Pawnshop Act]." Such inspections may only be made at a "reasonable time." Art. 5069–51.08, supra, unlike the statute in *Poindexter*, is not overly broad.

The appellant next contends that the trial court erred in refusing appellant's motion to quash the information; he asserts the information "is insufficient to give this appellant adequate notice to enable him to adequately prepare his defense to the accusation." The information alleges, in pertinent part, that the appellant did:

"Intentionally and knowingly during a reasonable time fail and refuse to allow T. T. Grubbs, a peace officer, to examine and make copies of the books, accounts, papers, correspondence, and records of the defendant's place of business, known as Kipperman's Pawn Shop, a licensed pawnshop."

The appellant complains for the first time on appeal that the information is insufficient because it fails to allege the purpose and authority underlying Officer Grubbs' request and fails to allege the manner in which the appellant refused to permit inspection. These contentions were not presented in the appellant's motion to quash; if they have any merit at all, they relate only to the sufficiency of notice and will not be considered when raised for the first time on appeal. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex. Cr.App.1974); *Parr v. State*, 575 S.W.2d 522 (Tex.Cr.App.1978); *Mears v. State*, 557 S.W.2d 309 (Tex.Cr.App.1977). The allegations of the information, which substantially follow the statute creating and defining the offense, are sufficient to allege a criminal offense. See *Clark v. State*, 577 S.W.2d 238 (Tex.Cr.App.1979); *Rush v. State*, 576 S.W.2d 628 (Tex.Cr.App.1978); *Mears v. State*, supra. The information is sufficient to invoke the jurisdiction of the trial court.

The appellant also renews the argument made in the motion to quash that the information does not allege with sufficient particularity the items sought to be inspected. Since this claim of inadequate notice was timely raised, it requires examination of the criminal accusation from his perspective. *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977). We find that the allegations of the information that appellant refused inspection of "books, accounts, papers, correspondence and records of the defendant's place of business, known as Kipperman's Pawnshop," viewed from this perspective, are sufficient to put him on notice

1. Art. 725b, V.A.P.C. (1925) was repealed by Acts 1973, 63rd Leg. p. 1165, ch. 425, Sec. 6.02, effective August 27, 1973.

in plain and intelligible language of the particular offense with which he is charged, Art. 21.11, V.A.C.C.P., and to enable him to prepare his defense. Cf. *Haecker v. State*, 571 S.W.2d 920 (Tex.Cr.App.1978); *Rhodes v. State*, 560 S.W.2d 665 (Tex.Cr.App.1978). The trial court did not err in overruling the appellant's motion to quash on this ground.

■ The appellant next contends that the trial court erred in admitting into evidence a certificate of facts from the Consumer Credit Commissioner stating Ted Kipperman had been issued a pawnshop license for his pawnshop, "when it was not shown by any competent evidence that Ted Kipperman named in the exhibit and the Ted Kipperman on trial were one and the same person." At trial, the appellant's only objection to the introduction of the certificate was as follows: "We object. No proper predicate has been laid for its introduction." The appellant's contention on appeal does not comport with his trial objection; nothing has been preserved for our review. See *Simpkins v. State*, 590 S.W.2d 129 (Tex. Cr.App.1979); *Nelson v. State*, 507 S.W.2d 565 (Tex.Cr.App.1974). Moreover, appellant's objection at trial was not sufficiently specific to preserve error. *Paige v. State*, 573 S.W.2d 16 (Tex.Cr.App.1979). See also, *Harris v. State*, 565 S.W.2d 66 (Tex.Cr.App. 1978).

The judgment is affirmed.

ROBERTS, J., concurs in result.

TEAGUE, J., not participating.

CLINTON, Judge, dissenting.

The majority opinion is right in what it says, but it comes to the wrong result by not saying enough.

The common element identified in *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) and restated in *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978)—"a long tradition of close governmental supervision"—is but one in the full formulation. Finding it dispenses with the warrant requirement of the Fourth Amendment and Article I, § 9 of our Bill of Rights, at least with respect to "the *stock* of such an enterprise."[1] But that is not the end of the analysis, only the beginning.

The Supreme Court then determines whether the statute that authorizes "a regulatory inspection system" is to advance a legislative objective of major importance and *"inspection is a crucial part of the regulatory scheme,"* *Biswell*, 406 U.S. at 315, 92 S.Ct. at 1596. It is at this point that the majority starts to choke up. Cursory reading of the Texas Pawnshop Act reveals that its regulatory scheme is directed towards objectives other than detering theft and minimizing its consequences. Indeed, the Act never even hints that such is its purpose; certainly an exploratory "inspection" to ferret out information possibly leading officers to stolen property is *not* "a crucial part" of the statutory scheme.[2] But there is still more.

1. In context, Justice White writing for the Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978) pointed out:

   "The Secretary urges that an exception from the search warrant requirement has been recognized for 'pervasively regulated business[es],' *United States v. Biswell*, 406 U.S. 311, 316 [92 S.Ct. 1593, 1596, 32 L.Ed.2d 87] (1972), and for 'closely regulated' industries 'long subject to close supervision and inspection.' *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74, 77 [90 S.Ct. 774, 775, 777, 25 L.Ed.2d 60] (1970). These cases are indeed exceptions, but they represent responses to relative unique circumstances. Certain industries have such a his-

   tory of government oversight that no reasonable expectation of privacy, see *Katz v. United States*, 389 U.S. 347, 351–352 [88 S.Ct. 507, 511, 512, 19 L.Ed.2d 576] (1967), could exist for a proprietor *over the stock of such an enterprise.*"

   (All emphasis is mine unless otherwise indicated.)

2. *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) makes clear that because business records and premises are still protected by the Fourth Amendment, *id.*, at 352–359, 97 S.Ct. at 628–632, even "the normal enforcement of the tax laws" does not justify an intrusion into the privacy of a businessman *id.*, 354, 97 S.Ct. 629,

Though the warrant requirement be justifiably waived by legislative action, still the "reasonableness" requisite of the constitutional mandates remain, for the pawnbroker, like the firearms and liquor dealers, retains *his* "justifiable expectations of privacy," *Biswell, id.*, at 316, 92 S.Ct. at 1596. But here the pawnbroker, quite unlike the firearms dealer,[3] *is* "left to wonder about the purposes of the inspector [and] the limits of his task," *ibid.*, when the "inspector" is a peace officer whose mission necessarily requires that he be tightlipped about his quest.[4] Thus, though it might be said the pawnbroker "in effect consents to restrictions placed upon him," they must still be "reasonable" within the meaning of the constitutional protections. *Biswell, ibid.*

Whatever occurred in earlier transactions with other peace officers aside,[5] the information in this case focuses on the later encounter initiated by Detective Grubbs. It alleges only that "during a reasonable *time*" appellant did fail and refuse to allow Grubbs "to examine and make copies of the books . . . and records of the defendant's place of business. . ." Grubbs testified that when he arrived at the pawnshop other officers were there, and the first thing he did: "I approached the defendant in this case, I identified myself as a police officer, and told him we wanted to inspect the records of the pawn shop, pawn shop tickets." Later asked about the "type of records" he was seeking to examine, Grubbs was still no more definite than to say "pawntickets themselves and the stubs that go with them." As the majority notes, upon his refusal[6] appellant was then immediately arrested, and the inspection of the tickets was thereafter made by an *employee* of the shop without success.[7] In these circumstances, we too should "decline to read [the statute] as giving *carte blanche* for warrantless invasions of privacy," *G. M. Leasing*, supra, 429 U.S. at 358, 97 S.Ct. at 631.

Accordingly, I respectfully dissent, but my view must not be misunderstood. I am doubtful that there is "a *long* tradition of *close* governmental supervision" of the business of operating a pawnshop, although I concede that provisions regulating its loans are not new;[8] but even if there is and if we are further to ascribe to the Legislature an intention to open the books and records of a pawnshop to "inspection" by any peace officer who demands that, then I would require the "inspector" to articulate *his* business so

and the Supreme Court is "unwilling to hold that the mere interest in the collection of taxes is sufficient to justify a statute declaring *per se* exempt from the warrant requirement every intrusion into privacy in furtherance of any tax seizure," *id.*, 358, 97 S.Ct. 631.

3. "Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. * * * The dealer is not left to wonder about the purposes of the inspector or the limits of his task."

4. Officer Allen Rockwell had been three years with the pawnshop detail, accompanied by Officer W. H. Elliott of the fence detail, left no doubt about the vagueness of his request, *viz*:

"Q: [By defense counsel]: So you asked then for the pawn tickets when you went in?
A: No, sir.
Q: You didn't?
A: No, sir.
Q: What did you ask for?
A: I asked to check the records, sir."
It was a refusal to that request that brought about the call to and response by Detective T.

T. Grubbs, and set the stage for the instant offense.

5. The majority does not mention that when Officers Rockwell and Elliott went to enter the front door of the pawnshop they found that it was closed and *locked*. Submitting to trappings of authority, an employee obliged their request and unlocked the door and admitted them.

6. In voicing his refusal to Grubbs, ironically appellant said the officer "could not come behind the counter without a search warrant."

7. As Detective Grubbs recounted this development, "I inquired into the tickets that we were looking for and the employee that was in charge was looking through the boxes and was unable to find any of the pawnshop tickets that were in question."

8. See the former Article 5069–3.17, V.A.C.S., enacted in 1967 and amended in 1969 as a part of the Consumer Credit—Consumer Protection Act.

that the pawnbroker is not "left to wonder about the purposes of the inspector [and] the limits of his task."

ONION, P.J., joins.