OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 11, 1999

The Honorable Judith Zaffirini
Chair, Human Services Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0021

Re:  Whether certain provisions of the Texas Controlled Substances Act, TEX. HEALTH & SAFETY CODE ANN. ch. 481 (Vernon 1992 & Supp. 1999), that authorize warrantless administrative searches violate article I, section 9 of the Texas Constitution (RQ-1198)

Dear Senator Zaffirini:

You ask whether certain provisions of the Texas Controlled Substances Act, TEX. HEALTH & SAFETY CODE ANN. ch. 481 (Vernon 1992 & Supp. 1999) (the "Act"), that authorize warrantless administrative searches violate article I, section 9 of the Texas Constitution. You are particularly interested in Health and Safety Code sections 481.078(e) and 481.081(e), two provisions enacted in the last legislative session[1] that condition the issuance of certain permits on the applicant's written consent to warrantless searches. Applying the judicial standard developed to review the constitutionality of warrantless administrative searches in the context of closely regulated industries, we conclude that neither provision is unconstitutional on its face.

Health and Safety Code sections 481.078(e) and 481.081(e) require persons who obtain permits to transfer "chemical precursors" or "chemical laboratory apparatus" to consent to the search of chemical precursors or chemical laboratory apparatus and, in addition, "any controlled premises, record, . . . or other item governed by [Health and Safety Code chapter 481] in the care, custody, or control of the person." See id. §§ 481.078(e), .081(e) (Vernon Supp. 1999). The term "controlled premises" encompasses both any place where records required under chapter 481 are kept and any place where a person is permitted to possess a controlled substance, chemical precursor, or chemical laboratory apparatus under chapter 481. Id. § 481.002(4).

A chemical precursor is a substance that may be used illicitly to manufacture a controlled substance or controlled-substance analogue. See id. § 481.077(a), (b). Section 481.077 of the Act requires a person who sells or transfers certain listed "precursor substances" to keep records of transactions. Id. § 481.077(k). Section 481.078 requires a person to obtain a chemical precursor transfer permit from the Department of Public Safety ("DPS") in order to transfer or receive

---

[1]See Act of May 23, 1997, 75th Leg., R.S., ch. 745, §§ 18, 20, 1997 Tex Gen. Laws 2411, 2435-36, 2437.

precursor substances. You ask about the constitutionality of subsection (e) of section 481.078, which provides as follows:

> The director [of DPS][2] may not issue a permit under this section unless the person applying for the permit delivers to the director a written consent to inspect signed by the person that grants to the director the right to inspect any controlled premises, record, chemical precursor, or other item governed by this chapter in the care, custody, or control of the person. After the director receives the consent, the director may inspect any controlled premises, record, chemical precursor, or other item to which the consent applies.

*Id.* § 481.078(e) (footnote added). Subsection (f) of section 481.078 provides that DPS "may adopt rules to establish security controls and provide for the inspection of a place, entity, or item to which a chemical precursor transfer permit applies." *Id.* § 481.078(f).

The Act defines "chemical laboratory apparatus" as any item of equipment designed to manufacture a controlled substance or controlled-substance analogue. *Id.* § 481.080(a). A person who transfers chemical laboratory apparatus must keep certain records and obtain a transfer permit from DPS. *Id.* §§ 481.080(b)-(m), .081(a) (Vernon 1992 & Supp. 1999). Subsection (e) of section 481.081 is almost identical to subsection (e) of section 481.078, providing:

> The director may not issue a permit under this section unless the person applying for the permit delivers to the director a written consent to inspect signed by the person that grants to the director the right to inspect any controlled premises, record, chemical laboratory apparatus, or other item governed by this chapter in the care, custody, or control of the person. After the director receives the consent, the director may inspect any controlled premises, record, chemical laboratory apparatus, or other item to which the consent applies.

*Id.* § 481.081(e) (Vernon Supp. 1999). And, like subsection (f) of section 481.078, subsection (f) of section 481.081 provides that DPS "may by rule establish security controls and provide for the inspection of a place, entity, or item to which a chemical laboratory apparatus transfer permit applies." *Id.* § 481.081(f).

---

[2]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(11) (Vernon Supp. 1999) (defining term "director" to mean director of DPS or his/her designee).

You ask whether these provisions violate article I, section 9 of the Texas Constitution, which prohibits warrantless searches:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9. The Texas Court of Criminal Appeals does not distinguish between the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution for purposes of analyzing the constitutionality of statutes authorizing warrantless administrative searches, and applies United States Supreme Court precedent in this area. *See Santikos v. State*, 836 S.W.2d 631, 632 n.1 (Tex. Crim. App. 1992). The Supreme Court has held that warrantless inspections of commercial premises in "closely regulated" industries may be valid exceptions to the Fourth Amendment warrant requirement. A "closely regulated" industry is an industry subject to pervasive government regulation, such as the liquor, firearms, pawnshop, or salvage parts industries. *See generally New York v. Burger*, 482 U.S. 691, 699-708 (1987). A participant in a closely regulated industry has a diminished expectation of privacy with respect to commercial property employed in the industry. *See id.* at 699.

In analyzing the constitutionality of warrantless administrative searches in the context of closely regulated industries, the Texas Court of Criminal Appeals applies a three-part test first articulated by the Supreme Court in *New York v. Burger*, 482 U.S. 691. The Court of Criminal Appeals has summarized that test as follows:

> First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection or warrantless search is made. Second, the warrantless inspection must be necessary to further the regulatory scheme. Third, the statutory provision must provide "a constitutionally adequate substitute for a warrant" so as to limit properly the discretion of the officers performing the inspection. In defining how to restrict constitutionally the discretion of the inspectors, the Supreme Court stated that the statute must carefully limit the inspection "in time, place, and scope."

*Santikos*, 836 S.W.2d at 633 (citations omitted).

Applying the *Burger* test here, we conclude that the pharmaceutical industry is closely regulated and that persons who transfer chemical precursors and chemical laboratory apparatus are participants in a closely regulated industry. A number of federal and state courts have concluded that

the pharmaceutical industry is a closely regulated industry.[3] "There is no doubt that the states have just as great an interest in regulating the pharmaceutical industry and controlling the illicit use of drugs as the federal government has in regulating the liquor and firearms industry." *Poindexter v. State*, 545 S.W.2d 798, 800 (Tex. Crim. App. 1977). In addition, we have little doubt that a substantial government interest informs the Act's regulatory scheme and that the warrantless inspections authorized by the provisions at issue are necessary to further that regulatory scheme.[4] Whether sections 481.078(e) and 481.081(e) satisfy the third part of the *Burger* test–that a statute provide a constitutionally adequate substitute for a warrant by limiting the time, place and scope of inspections–is a somewhat closer question. As explained below, however, given more recent Texas Court of Criminal Appeals cases in this area we have little doubt that the answer is yes.

In two cases predating *Burger*, the Texas Court of Criminal Appeals applied similar criteria to strike down a Parks and Wildlife Code provision authorizing warrantless administrative searches. *See Baggett v. State*, 722 S.W.2d 700, 702 (Tex. Crim. App. 1987); *Nelsoney v. State*, 711 S.W.2d 636, 638 (Tex. Crim. App. 1986). That statute, Parks and Wildlife Code section 47.037, provided that "[n]o person may refuse to allow an employee [of the Texas Parks and Wildlife Department] *to inspect aquatic products handled by or in the possession of any commercial fisherman, wholesale fish dealer, or retail fish dealer at any time or in any place*." Act of May 30, 1975, 64th Leg., R.S., ch. 545, § 1, 1975 Tex. Gen. Laws 1405, 1508 (emphasis added) (amended 1987) (current version at TEX. PARKS & WILD. CODE ANN. § 47.037 (Vernon 1991)). The court held in both cases that the statute violated state and federal guarantees against unreasonable searches on its face because it did not limit the type of building to be inspected or place any limit on the time of inspections. *See Baggett*, 722 S.W.2d at 702; *Nelsoney*, 711 S.W.2d at 638.

By contrast, in a more recent, post-*Burger* case, the court addressed the constitutionality of Alcoholic Beverage Code section 101.04, which provided that by accepting a license or permit, the holder consents that the Alcoholic Beverage Commission or peace officer "may enter the licensed premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this code." TEX. ALCO. BEV. CODE ANN. § 101.04 (Vernon 1995). Unlike the Parks and Wildlife Code provision, the court concluded that this statute provided an adequate substitute for a warrant because

---

[3]*See, e.g., United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982); *United States v. Jamieson-McKames Pharms., Inc.*, 651 F.2d 532, 537 (8th Cir. 1981); *United States v. Schiffman*, 572 F.2d 1137, 1142 (5th Cir. 1978); *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682, 684 (2d Cir. 1974); *United States v. Montrom*, 345 F. Supp. 1337, 1340 (E.D. Pa. 1972), *aff'd without opinion*, 480 F.2d 918 (3d Cir. 1973); *Commonwealth v. Lipomi*, 432 N.E.2d 86, 93 (Mass. 1982); *Hosto v. Brickell*, 577 S.W.2d 401 (Ark. 1979); *People v. Curco Drugs, Inc.*, 350 N.Y.S.2d 74 (Crim. Ct. N.Y. 1973).

[4]The ultimate resolution of these issues would require findings of fact and is beyond the purview of this office. *Cf.* Tex. Att'y Gen. Op. Nos. DM-484 (1998) at 1 (concluding that whether statute served legitimate state interest and was rationally related to that interest for Equal Protection Clause purposes involved fact questions and was beyond purview of attorney general opinion), DM-367 (1998) at 2 (concluding that because questions of fact were integral to determining whether statute served compelling state interest and was narrowly tailored to achieve that interest, this office could not resolve whether statute violated First Amendment in attorney general opinion).

[it] grants to police officers, and other state agents, authority to enter a licensed premises at any time and to conduct an investigation or inspect the premises for performing any duty imposed under the code. . . . In accordance with the third criteria enunciated in *Burger* [], the T.A.B.C. limits the scope of warrantless inspections to the performance of any duty imposed by the code. The duties of the code are detecting code violations; violations are statutorily defined.

*McDonald v. State*, 778 S.W.2d 88, 90-91 (Tex. Crim. App. 1989).

Significantly, the Texas Court of Criminal Appeals' most recent case in this area, *Santikos v. State*, 836 S.W.2d 631, also upheld a warrantless administrative search conducted under section 101.04 of the Alcoholic Beverage Code. In that case, the appellant, a night club owner, asserted that the statute was facially unconstitutional because it authorized searches of licensed premises at any time and thus failed to limit inspections as required by *Burger*. After announcing that a facial challenge to a statute may only succeed if the challenger establishes that "no set of circumstances exists under which the statute will be valid," *id.* at 633, the court noted that the inspection at issue had been conducted during the club's regular business hours and concluded that "despite the 'at any time' language in Section 101.04 the inspectors in appellant's case did not arbitrarily and indiscriminately use Section 101.04 to inspect or search the club without a warrant," *id.* at 634.

With these cases as backdrop, we now apply the third *Burger* criterion to the statutes at issue. Again, in the words of the Texas Court of Criminal Appeals in *Santikos*, *Burger* requires that "the statutory provision must provide 'a constitutionally adequate substitute for a warrant' so as to limit properly the discretion of the officers performing the inspection. In defining how to restrict constitutionally the discretion of the inspectors, the Supreme Court stated that the statute must carefully limit the inspection 'in time, place, and scope.'" *Id.* at 633 (citations omitted). Under *Santikos*, however, such a statute is not unconstitutional on its face unless "no set of circumstances exists under which the statute will be valid." *Id.* Although the scope of the inspections permitted by sections 481.078(e) and 481.081(e) is broader than the scope of the inspections permitted by Alcoholic Beverage Code section 101.104, it is difficult to imagine that a challenger could establish that "no set of circumstances exists" under which these statutes will be valid.

Again, section 481.078(e) provides that after the director receives written consent from the chemical-precursor transfer permittee, "the director may inspect any controlled premises, record, chemical precursor, or other item to which the consent applies." TEX. HEALTH & SAFETY CODE ANN. § 481.078(e) (Vernon Supp. 1999). Similarly, section 481.081(e) provides that after the director receives written consent from the chemical apparatus transfer permittee, "the director may inspect any controlled premises, record, chemical laboratory apparatus, or other item to which the consent applies." *Id.* § 481.081(e). In contrast to section 101.04 of the Alcoholic Beverage Code, sections 481.078(e) and 481.081(e) permit inspections not just at licensed premises but at any place where chemical precursors, chemical laboratory apparatus, or related records may be located. *See*

*id.* §§ 481.078(e), .081(e); *see also id.* § 481.002(4) (definition of "controlled premises"). Nor do these provisions limit the time or scope of inspections. And, unlike Alcoholic Beverage Code section 101.04, these provisions do not limit the scope of inspections to DPS enforcement duties under the Act. Although DPS is authorized to adopt rules regarding these inspections, *see id.* §§ 481.078(f), .081(f), and thus has the authority to limit its officers' discretion by rule, we are not aware that it has done so. After *Santikos*, however, a facial challenge to these provisions is unlikely to succeed in state court because there are many conceivable sets of circumstances under which searches conducted pursuant to these statutes will be valid. A defendant will succeed in challenging the constitutionality of a search only if he or she can demonstrate that the particular search was conducted "arbitrarily and indiscriminately." *See Santikos*, 836 S.W.2d at 634. Of course, this office cannot predict how a court would resolve a constitutional challenge to any particular inspection conducted under the authority of these provisions.

In sum, in light of *Santikos*, we doubt that a Texas court would invalidate either section 481.078(e) or section 481.081(e) on its face under article I, section 9 of the Texas Constitution for failing to provide an adequate substitute for a search warrant. Rather, we believe that a Texas court would probably examine the reasonableness of the inspection at issue in the particular challenge. Still, the legislature might consider amending sections 481.078(e) and 481.081(e) to reduce the likelihood of a successful challenge (and unreasonable searches) by limiting the time, place and scope of inspections. We do not address the constitutionality of these statutes under the Fourth Amendment to the United States Constitution nor do we speculate on how a federal court might resolve a facial challenge to these statutes.

## S U M M A R Y

Neither section 481.078(e) nor section 481.081(e) of the Health and Safety Code on its face violates article I, section 9 of the Texas Constitution. A Texas court would examine the reasonableness of the inspection at issue in the particular challenge and determine if these statutes as applied run afoul of article I, section 9 of the Texas Constitution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General