[No. 1760.]

SIMUEL HAWKINS v. THE STATE.

1. PRACTICE — CERTIFICATE OF TRANSFER FROM THE DISTRICT TO THE COUNTY. COURT.— If a prosecution in the county court be dismissed because of an insufficient certificate to the proceedings in the district court from whence the case was transferred, it is not reversible error to permit the State's at-

torney to file another and complete certificate and proceed with the case. The better practice, however, would be to file such correct certificate in answer to the motion to dismiss. See this case in illustration.

2. Same — Continuance.— An application for a continuance, to be sufficient, should negative the fact of a want of diligence to secure the attendance of the absent witnesses.

3. Same — Evidence.— The defense in an assault case proposed to prove that it was the custom and practice of the defendant and his associates to denounce each other in violent and abusive language on the occasion of dispute or controversy between them, sometimes flourishing deadly weapons and indulging in threats, when in fact such conduct was merely matter of jest, and attended by no actual intention of committing violence. This evidence was excluded upon the State's objection. Held, that the court did not err. See the opinion in extenso on the question.

4. Same — Charge of the Court.— When the general charge, or a special charge given, embraces the substance of a subsequent special charge asked, the court is not required to give such subsequent special charge.

Appeal from the County Court of Brazoria. Tried below before the Hon. John H. Norris, County Judge.

The indictment charged the appellant with an assault upon Green Bonner, with a pistol, in Brazoria county, on the 1st day of November, 1883. The conviction was for simple assault, and the punishment assessed was a fine of $25.

Green Bonner was the first witness for the State. He testified that on the 1st day of November, 1883, he, with defendant and George Harris, went to Heinze's saloon in Brazoria, Brazoria county, Texas. The witness had given Harris $7 to pay to a party on Cedar Lake. Defendant and Harris were drinking. Witness told Harris to return him his money, as being in whisky, he might spend it. Harris returned witness all of the money but fifteen cents, and witness remarked: "Now you see there; you have already spent fifteen cents of my money." Harris then turned to defendant and asked him for the loan of fifteen cents. Defendant picked up fifteen cents of witness's own money which lay on the counter, handed it to witness, and said: "Now, that's right." Witness replied: "No, it is not right; that is my own money." Defendant then said: "That settles it; if it don't, you d——d son of a b——h, this will settle it," and drew his pistol, stepped back about six feet and presented it at witness. Heinze caught defendant by the arm and said: "Simuel, put your pistol up," and defendant did so.

Cross-examined, the witness stated that he and the defendant were perfectly good friends. They had been intimate friends before the occurrence narrated, and were intimate friends at the time of this trial. The defendant was drunk at the time this affair happened.

He did not cock the pistol. When drunk the defendant was very noisy and boisterous. Witness had often drank with defendant, and took a drink with him a short time before this disturbance occurred.

E. A. Heinze was the next witness for the State. He testified in almost the exact language used by Bonner, but added that when defendant drew his pistol he appeared to be angry.

Cross-examined, witness stated that when in whisky the defendant was very noisy and boisterous. He had been drinking on the day of this disturbance, and had drank once at witness's bar with Bonner. He, however, was not dead drunk. When defendant or one of his associates called each other a son of a b—h, or such other name, they usually meant no harm. Defendant and Bonner appeared to be intimate friends.

A. R. Brown testified, for the defense, that he knew defendant and Bonner to be good friends. When Bonner came to town he usually put up at defendant's house, slept and ate there. When in drink defendant was very noisy and boisterous, and his favorite epithet was "d—d son of a b—h," by which, however, he never seemed to mean to provoke quarrels. Witness had never heard defendant and Bonner curse and abuse each other as d—d sons of b—hs.

Ben Banks testified substantially as did the witness Brown. He stated in addition that he had observed a greater degree of intimacy between defendant and Bonner since the affair at Heinze's saloon.

Green Bonner, recalled by the State, testified that the defendant had talked to him about this case with the view of suppressing prosecution.

The motion for new trial raised the questions discussed in the opinion.

*John Ballowe,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. When this case was first transferred from the district to the county court, the clerk's certificate accompanying the transfer made it appear as though the indictment had been presented in the district court two days subsequent to the order of said court transferring the said indictment to the county court. Defendant presented a plea to the jurisdiction of the county court, based upon this ground, which was sustained and the case dismissed. On the following day the county attorney, on motion, obtained a

*certiorari* to the district clerk to send down a complete transcript of the record, and in obedience to the same the said clerk did send down a more complete record, which made the transfer regular in all respects, and which showed that the order for and transfer of the case were in fact made at a date subsequent to the presentment of the indictment in the district court.

When the case was again reached for trial, defendant interposed a second plea to the jurisdiction upon the ground that, the cause having been previously dismissed, the county court could not acquire jurisdiction anew in the manner attempted. This plea was overruled, exception was saved, and the ruling is here claimed for error. A question in every respect identical was made in *Hasley* v. *The State*, 14 Texas Ct. App., 217, and it was there said: "While this proceeding as presented by the record was irregular, still we do not think it was such error as demands a reversal of the judgment. This court has held that where the certificate is defective it may be amended or a new one obtained (*McDonald* v. *The State*, 7 Texas Ct. App., 113), and it was proper for the county attorney in this cause to have filed a correct certificate; but this should have been done in reply to the motion to dismiss. But we do not think that the dismissal of the cause barred its further prosecution. When a correct certificate was filed it renewed the case and gave jurisdiction of the same to the court in the same manner and to the same extent as if there had been no previous action of the court therein."

Court convened and the term commenced on the 4th day of November. On the 7th defendant filed his application for a continuance for absent witnesses who were residents of the county and under service of process by subpœna. The allegation was that they had never disobeyed a subpœna until the present term. By use of diligence, when it was found the witnesses were absent on the first day of court, their presence might have been secured in time for the trial. The application does not sufficiently negative the fact of want of diligence, and we cannot say that the court erred in overruling it.

Defendant's third, fourth, fifth and sixth bills of exception present in substance the same question. Defendant proposed to prove by each of the several witnesses the customs and habits of defendant and his associates on occasions, when controversies or disputes would arise amongst them, of cursing, abusing and denouncing each other in insulting, violent and obscene language, frequently drawing their knives and pistols and flourishing them in fun and with threatening gestures, without any intention to use them to the in-

jury of any one. This testimony, on objection by the prosecution, was excluded by the court as inadmissible and incompetent. In this ruling the court was correct. Whilst it might, perhaps, have been entirely legitimate to show, if possible, that defendant, in the circumstances inquired about, was simply indulging in characteristic though in only harmless fun, notwithstanding his language was violent and insulting and his actions threatening and dangerous, and whilst he was entitled, if he so desired, to put in issue his general character as a man of peace, notwithstanding he was "full of strange oaths," overbearing and desperate in demeanor, and apparently utterly reckless in his fondness for the handling and display of dangerous and deadly weapons, still the evidence, we apprehend, would not be permitted to extend beyond his individual acts and conduct at the particular time, or his individual general reputation as a man of peace and good will. Evidence of custom, usage or habit amongst the select class of his associates was not admissible or competent.

Evidence of usage or custom in those circumstances where they have otherwise become firmly fixed and established is never "permitted to have effect when they contravene any established general rule of law; and, therefore, evidence in proof of any such usage is ordinarily inadmissible." (2 Greenl. Evid. (13th ed.), § 249.) We are aware of no principle of law which would tolerate a usage, custom or prescription that would confer upon a citizen the right to act the rowdy to the disturbance of the peace, and carry a six-shooter in violation of the general statutes.

Two special instructions were requested for defendant, the first of which was "that in every assault there must be an intent to injure, coupled with an act which must be the beginning of the attempt to injure *at once*, and not a mere preparation for some contemplated injury that may afterwards be inflicted; therefore, if you believe from the evidence that the defendant Simuel Hawkins drew the pistol only in preparation for the infliction of some contemplated injury, and not with the intention to injure Green Bonner *at once*, you will acquit him." This first instruction was given. The second, which the court refused, was "that in order to convict the defendant Simuel Hawkins of the offense charged, you must first believe from the evidence that if the defendant did draw and present his pistol at Green Bonner, as alleged, the same was done with the intent to injure, and was not an act of drunken bravodo." Having given the first there was no necessity for the second instruction, as the latter was embraced substantially in the former.

The evidence directly pertinent to the instructions was that when Bonner claimed the money, Hawkins, the defendant, said "that settles it. If that don't settle it, you damn son of a bitch, this will;" then stepped back about six feet, drew his pistol and presented it at Bonner, when Mr. Heinze caught him by the arm and said "'Simuel, put up your pistol,' and Simuel did so." The charges given fully submitted the question of intent to the jury.

We have found no error for which the judgment in this case should be reversed, and it is therefore affirmed.

*Affirmed.*

[Opinion delivered February 25, 1885.]