

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00295-CR

---

THE STATE OF TEXAS, Appellant

v.

MARIO WLADIMIR GONZALEZ, Appellee

---

On Appeal from the County Court at Law No. 7
El Paso County, Texas
Trial Court No. 20240C02894

---

## MEMORANDUM OPINION

Because "jurisdiction over a case is an absolute systemic requirement," the Court of Criminal Appeals has recognized that "[i]f there is no jurisdiction, the court has no power to act."[1] Criminal jurisdiction over a person requires the proper "filing of a valid indictment or

---

[1] *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).

information."[2] In this appeal, the State challenges the dismissal of an indictment and case against Mario Wladimir Gonzalez. A grand jury empaneled by a district court returned an indictment charging Gonzalez with the misdemeanor offense of participating in a riot. After the cause was assigned to a county court at law, Gonzalez filed a plea to the jurisdiction seeking dismissal of his case. The trial court dismissed his case, and the State appealed.

We conclude that the county court's jurisdiction was not properly invoked and it lacked authority to take any action other than to dismiss Gonzalez's case. Accordingly, we affirm the order dismissing the case.

## I. BACKGROUND

The State sought, and a grand jury empaneled in an El Paso district court returned, indictments against 141 individuals, including Gonzalez, alleging participation in an April 12, 2024 riot in El Paso, Texas. The indictments were filed with the El Paso County Clerk and assigned en masse to a county court at law. The record before us consists of the county court clerk's record and reporter's record for the hearings held in Gonzalez's case on May 15, 2024, and June 24, 2024, in which the parties argued over the filing of the indictment and the process by which the case came before the county court.

During the May 15, 2024 hearing, the court and the parties referenced earlier hearings held in other, similarly charged defendants' cases that also involved questions about the county court's jurisdiction and the process by which indicted misdemeanors came before the county court. Further, the court specifically stated it was considering in this case the arguments from one such

---

[2] *Jenkins v. State*, 592 S.W.3d 894, 898 (Tex. Crim. App. 2018) (citing *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim. App. 1980)).

hearing, held on May 13, 2024, and involving 119 similarly charged defendants. We do not, however, have transcripts from any of those referenced hearings in the record before us.

## A. The indictment

In April 2024, a grand jury empaneled by an El Paso County district court returned an indictment charging Gonzalez with the Class B misdemeanor offense of participating in an alleged April 12, 2024 riot.[3]

The indictment stated that the "Grand Jurors for the County of El Paso, State of Texas, duly organized as such, at the January Term, A.D., 2024, of the 120th Judicial District Court for said County, upon their oaths in said Court, present that on or about the 12th day of April, 2024, and anterior to the presentment of this indictment, in the County of El Paso and State of Texas . . . Gonzalez [committed the offense of participating in a riot]." It was signed by the grand jury foreperson.

The bottom portion of the instrument indicated it was filed on April 25, 2024. It was signed by a deputy county clerk, who also certified it was "a true and correct copy of the original indictment on file in my office." A hand-written notation appearing on the top of the document shows it was assigned county court cause number 20240C02894. On its face, the indictment contains no district clerk file stamp, no district court cause number, and no indication it was filed in the district court or with the district court clerk. The case was assigned to County Court at Law No. 7.

## B. The plea to the jurisdiction and the transfer order

Gonzalez filed a plea to the jurisdiction in the county court, alleging it lacked subject-matter jurisdiction over his case, and thus he sought a dismissal. The State obtained an "Order of

---

[3] *See* Tex. Penal Code Ann. § 42.02(b), (e).

3

Certification and Transfer" from the district court, in which it stated, "the Grand Jury inquired into misdemeanors and returned indictments relating to those misdemeanor cases listed in the [attached] Charging Instrument Report," which consists of a list of the 141 cases, including Gonzalez's, for which the grand jury returned indictments charging the defendants with participating in the alleged April 12, 2024 riot. The order was signed on May 9, 2024. All of the cases listed in the Charging Instrument Report were identified by their county court cause numbers. The district court "certifie[d] to the County Courts . . . that said indictments were returned into the District Court" and ordered that the indictments be "transferred to the County Courts having jurisdiction to try them for trial."

The order, though signed by the district court judge, was file-stamped by the County Clerk, not the District Clerk; it included a county court cause number in the caption, indicating that it was entered in "Cause Nos.: 20240C02820 et[] seq."; and it was captioned as pending "IN THE GRAND JURY FOR THE 120TH DISTRICT COURT," rather than in the district court. No district court cause number appears anywhere in the transfer order or the Charging Instrument Report it referenced.

### C. Hearings on the plea to the jurisdiction

The trial court held a hearing on Gonzalez's plea to the jurisdiction on May 15, 2024.[4] At that hearing, the county court judge acknowledged that 141 indictments had been filed in his court and took judicial notice of the county clerk's record and the district court's May 9 transfer order

---

[4] The hearing also addressed the pleas to the jurisdiction filed by 21 other defendants who were similarly charged with the riot offense.

We note that, although there were 22 similarly charged defendants whose pleas to the jurisdiction were considered together by the county court, we only have 21 appeals arising from those cases, because the State re-presented the charges against one of the defendants, Emilio Jose Henriquez, to the grand jury; as a result, Henriquez's appeal is in a different procedural posture from the other 21 defendants whose cases were considered at the May 15, 2024, hearing.

4

filed in the case.[5] Gonzalez argued the county court lacked jurisdiction to preside over his case, contending his indictment was never filed with the district clerk and no case was ever opened in the district court; the transfer order was "invalid" and ineffective to transfer the case from the district court to the county court, as there was no open or pending case in the district court that could have been transferred; the statutory procedures for transferring a case were not followed; the procedures for transferring an indicted misdemeanor case from a district court to a county court are critical to the county court's jurisdiction; and the proper remedy was to dismiss the case. The State countered that a valid indictment had been presented to the county court; the indictment was properly filed in the county court and a transfer order was not needed; the indictment was not filed in the district court and then transferred out to the county court; and it would "make[] no sense" to file an indicted misdemeanor case in the district court, assign the case a district court number, order the case transferred, and then assign the case a county court cause number, thereby assigning two cause numbers to the same case. The State further argued, both at the hearing and in a later written response, that if a transfer order was needed, the May 9 order sufficed, any shortcoming in the filing requirements was a "procedural irregularity," not a jurisdictional defect, and, to the extent the transfer order was deficient, the proper remedy was for the county court to send the indictment back to the grand jury, rather than dismiss the indictment.

At the May 15 hearing, the county court expressed concern that the indictment had not been properly filed in its court, took the case under advisement, and informed the parties it would consider the arguments and authorities submitted to the court. The court further suggested that the

---

[5] We note that although there were 141 similarly charged defendants, we only have 140 appeals arising from these cases. According to the clerk's record, defendant Fernando Ramon Romero was indicted for the same charge as the other 140 defendants and a case, trial court cause number 20240C02986, was opened against him in the county court, but we do not have an appeal from his trial court case and our records do not reflect what happened in the case.

5

State could remedy any problems with the transfer process by obtaining a new indictment from the grand jury and following the correct steps to effectuate a transfer.

The county court held a second hearing on Gonzalez's plea on June 24, 2024. At that hearing, the court expressed its belief that the State had agreed—after the May 15, 2024 hearing—to re-indict Gonzalez, and it indicated it was waiting for that to be accomplished before ruling on Gonzalez's plea to the jurisdiction. The State explained that although it re-indicted 59 of the original 141 defendants who were in custody, it chose not to re-indict the remaining defendants, including Gonzalez, who had been released on bond.

As to Gonzalez's case, the State argued it had no burden to take any action, and that it was the county court's obligation to transfer the matter to the "grand jury court" if it believed there was a defect in the process. At the conclusion of the hearing, the county court ruled that Gonzalez's case had not been properly transferred to the county court and it lacked jurisdiction to hear his case.

On June 26, 2024, the county court issued an "Order Dismissing Indictment," which states in pertinent part:

> This cause is before the Court on Defendant's Plea to the Jurisdiction. After hearing the arguments of counsel, reviewing the evidence presented and considering all documents contained in the Court's file, the Court finds that it does not have subject matter jurisdiction in this cause.
>
> It is therefore ORDERED that this cause is DISMISSED.
>
> Defendant is ORDERED released from custody and the El Paso Sheriff's Office is ORDERED to remove any conditions of bond associated with this case from the Texas Crime Information Center database maintained by the Department of Public Safety.

The State timely appealed from the order. In turn, Gonzalez moved to dismiss the appeal.

6

## II. THE STATE'S RIGHT TO APPEAL

In Gonzalez's motion to dismiss the appeal, he asserts this Court lacks subject-matter jurisdiction. He claims the order of dismissal is not final and appealable and the State lacks a right to appeal.[6] *See Bell v. State*, 515 S.W.3d 900, 901 (Tex. Crim. App. 2017) (recognizing that a "jurisdictional issue should be fully vetted by the court of appeals in the first instance"). Because we conclude the order is appealable and the State has a right to appeal, we deny Gonzalez's motion.

### A. Applicable law

Article 44.01 of the Texas Code of Criminal Procedure grants the State a right to appeal any trial court order in a criminal case that "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint." Tex. Code Crim. Proc. Ann. art. 44.01(a)(1); *see also* Tex. Const. art. V, § 26 ("The State is entitled to appeal in criminal cases, as authorized by general law."). Under this statute, "the State has the power to appeal from any trial court order concerning an indictment or information . . . whenever the order effectively terminates the prosecution in favor of the defendant."[7] *State v. Moreno*, 807 S.W.2d 327, 332 (Tex. Crim. App. 1991). Further, the fact that the State may have the ability to amend an indictment

---

[6] In its reply brief, the State argues that Gonzalez's request for dismissal of this appeal constitutes an unauthorized cross-appeal that should be dismissed for want of jurisdiction. But an appeal—whether a direct appeal or a cross-appeal—is a proceeding that challenges a decision by a lower court. *See, e.g.*, *Appeal*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "appeal" as "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal"); *Cross-Appeal*, BLACK'S LAW DICTIONARY (12th ed. 2024) (referencing the definition of an appeal); *Point of Error*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "point of error" as "[a]n alleged mistake by a lower court asserted as a ground for appeal"). Thus, a challenge to this Court's jurisdiction is not an "appeal," a "cross-point in a State's appeal," or a "cross-appeal." Moreover, "[a]n appellate court has jurisdiction to determine whether it has jurisdiction on its own motion or upon motion of a party to the appeal." *State ex rel. Holmes v. Hon. Ct. of Appeals for Third Dist.*, 885 S.W.2d 389, 405 (Tex. Crim. App. 1994) (Overstreet, J., concurring in part and dissenting in part). As such, we conclude that we have jurisdiction to consider Gonzalez's challenge to our jurisdiction to hear the State's appeal. *See Olivo v. State*, 918 S.W.2d 519, 523 (Tex. Crim. App. 1996) (recognizing that an appellate court "has jurisdiction to determine whether it has jurisdiction").

[7] The court noted, however, that a verdict of acquittal is not reviewable on appeal. *See State v. Moreno*, 807 S.W.2d 327, 332 n.6 (Tex. Crim. App. 1991).

to correct any deficiencies the court may perceive in the indictment is irrelevant, as the State may appeal from a trial court order that forces the State to amend the charging document. *See id*. at 333–34.

### B. Analysis

In terms of appealability, Gonzalez argues in both his motion and his appellate brief that the trial court did not dismiss the indictment but instead dismissed "the proceeding." And, he contends, because the State was not barred by the county court from prosecuting his case in the future by obtaining a new indictment or information charging him with the same offense, the county court's order is not a final, appealable order and it did not "effectively terminate" his prosecution.

We disagree and instead conclude that the county court's order effectively terminated his prosecution on this indictment. Whether the State can prosecute his case in the future is immaterial to our jurisdiction over the State's appeal of the challenged order. As the State points out, the trial court's order is labeled "Order Dismissing Indictments." Thus, while the body of the order stated the court was granting Gonzalez's plea to the jurisdiction due to a lack of subject-matter jurisdiction and was thereby dismissing "this cause," the effect of the order was to dismiss the indictment filed in that court and preclude the State from prosecuting Gonzalez on the charged offense. The fact that the State had the option to re-indict Gonzalez or open a new case by filing an information in the county court does not impact the appealability of the order at issue.

As the Court of Criminal Appeals has explained, the key issue in determining the appealability of an order dismissing an indictment is not whether the order precluded the State from re-indicting a defendant, i.e., whether it was with prejudice, but whether the order precluded the State from prosecuting the defendant on the indictment "under which it wished to proceed."

8

*See State v. Richardson*, 383 S.W.3d 544, 548 (Tex. Crim. App. 2012) ("By quashing the enhancement paragraphs [in the State's indictment] and thereby prohibiting the state from referring to the [defendant's] offenses as felonies, the trial court's ruling foreclosed the state from proceeding on the indictment 'under which it wished to proceed.'") (citing *United States v. Wilson*, 420 U.S. 332, 333 n.7 (1975)). In other words, regardless of whether the State could amend an indictment or continue the prosecution in some other fashion, where the trial court finds that the State may not proceed on an indictment as filed in its court, "the State is entitled to stand on its charging instrument and appeal a trial court's adverse ruling dismissing the same, even if amendment is possible." *State v. Plambeck*, 182 S.W.3d 365, 370 (Tex. Crim. App. 2005). This is so even if the trial court's ruling was without prejudice. *Id.*

Thus, we conclude that, regardless of the manner in which the county court phrased its order, because the order precluded the State from going forward with its prosecution of the indictment at issue, the court's order is appealable. *See Moreno*, 807 S.W.2d at 332 (holding Art. 44.01(a)(1) permits the state to appeal an order concerning an indictment or information "whenever the order effectively terminates the prosecution in favor of the defendant"); *see also State v. Young*, 810 S.W.2d 221, 223 (Tex. Crim. App. 1991) (recognizing that "[t]he mere label attached either to the defendant's motion or to the trial court's order ruling on same cannot determine its appealability"). Accordingly, we conclude that we have jurisdiction over the State's appeal, and we deny Gonzalez's motion to dismiss. We next turn to the merits of the State's appeal.

## III. ISSUE ON APPEAL

On appeal, the State presents a single point of error, contending "the trial court erred by dismissing valid and perfectly transferred indictments," including Gonzalez's case. In support of

its contention, the State advances two primary arguments.[8] First, the State asserts the case was properly transferred from the district court to the county court under Articles 21.26 and 21.28 of the Texas Code of Criminal Procedure. Second, the State argues that, even if it was not properly transferred, "the trial court judge utilized an unauthorized remedy" when it dismissed the proceeding. The proper remedy, according to the State, was for the county court judge to re-transfer the case "back to . . . the court with the sitting grand jury, the 120th District Court." The State therefore requests that we reverse the county court's dismissal order and remand the case to the county court "for disposition of the charges levied against each defendant[]."

## IV. STANDARD OF REVIEW

In reviewing the dismissal of an indictment, we apply a bifurcated standard of review. *See State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We give "almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness." *Id.* However, we apply "a de

---

[8] In addition to its primary arguments, the State also complains that the county court failed to explain why it granted the defendants' pleas to the jurisdiction. As set forth above, however, throughout the two hearings held in this matter, the county court explained its concerns about the validity of the transfer process and its belief that it lacked jurisdiction to hear Gonzalez's case. But more importantly, the State has not cited any authority to support a conclusion that the county court was required to provide any such explanation, whether orally or in writing, prior to ruling on a plea to the jurisdiction. Nor has the State addressed how any such failure to provide an explanation would constitute reversible error. Therefore, the State has waived this complaint. *See* Tex. R. App. P. 38.1(i) (addressing briefing requirements); *Adams v. State*, No. 08-10-00235-CR, 2012 WL 3025915, at *5 (Tex. App.—El Paso July 25, 2012, no pet.) (not designated for publication) (recognizing that when an appellant has "inadequately briefed [an]issue, nothing is presented for [an appellate court's] review," and the issue is therefore "waived" (citing *Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (recognizing that the failure to adequately brief an issue results in waiver))). In addition, the State neither requested an explanation of the ruling from the county court, nor did it object to any deficiencies in the county court's order granting Gonzalez's plea. Thus, the State failed to preserve any complaint it may have had on this issue. *See* Tex. R. App. P. 33.1 (addressing error preservation requirements); *see also State v. Robles*, 631 S.W.3d 870, 873–74 (Tex. App.—San Antonio 2021, no pet.) (stating that preservation of error requirements apply to the State when the State is the appellant); *Jean v. State*, Nos. 14-94-00913-CR, 14-94-00914-CR, 1996 WL 460177, at *2 (Tex. App.—Houston [14th Dist.] Aug. 15, 1996, no pet.) (not designated for publication) (stating the appellant failed to preserve error by failing to request findings of fact and conclusions of law and by failing to object to the trial court's failure to file findings of fact and conclusions of law).

novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.*

Here, because no witnesses testified at the hearings and our decision depends exclusively on a question of law, that is, whether procedures were followed to lawfully transfer the indictments, we review the issue de novo. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) ("When the resolution of a question of law does not turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, so appellate courts should conduct a *de novo* review of the issue."); *see also Mungin v. State*, 192 S.W.3d 793, 794 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (recognizing that the adequacy of an indictment is a question of law that an appellate court reviews de novo).

Moreover, as explained below, our decision hinges on interpreting the statutes and constitutional provisions defining when a county court has jurisdiction to entertain an indicted case, which are pure questions of law. *See Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009) (recognizing that statutory construction involves questions of law that an appellate court reviews de novo); *City of Fort Worth v. Rylie*, 649 S.W.3d 246, 249 (Tex. App.—Fort Worth 2022, pet. denied) (recognizing that the de novo standard of review applies to both constitutional and statutory interpretation (citing *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 87 (Tex. 2015); *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013))).

To resolve the State's contention that the county court erred in dismissing the indictment, we must delve into the grand jury process and review the procedures required to transfer a case to a county court when a grand jury empaneled in a district court returns an indictment charging a defendant with a misdemeanor offense.

11

## V. WHETHER THE COUNTY COURT ERRED IN DISMISSING THE INDICTMENT

As the key question in this case is whether jurisdiction vested in the county court to adjudicate the indictment filed against Gonzalez, we start with a brief overview of what jurisdiction entails in a criminal proceeding of this nature. Then, we turn to the specific question of whether the processes followed in this case properly invoked the jurisdiction of the county court over the indictment charging Gonzalez with the misdemeanor riot offense.

### A. Law on jurisdiction

"The term 'jurisdiction' refers to the power of a court to hear a controversy and make decisions that are legally binding on the parties involved." *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009) (citing *Dears v. State*, 154 S.W.3d 610, 612 (Tex. Crim. App. 2005)). Because "jurisdiction is an absolute systemic requirement," the Court of Criminal Appeals has recognized that "[i]f there is no jurisdiction, the court has no power to act." *Id*. "A trial court's jurisdiction over a criminal case consists of the power of the court over the 'subject matter' of the case, conveyed by statute or constitutional provision, coupled with 'personal' jurisdiction over the accused[.]" *Dunbar*, 297 S.W.3d at 780 (quoting *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981)); *see also Jenkins v. State*, 592 S.W.3d 894, 898 (Tex. Crim. App. 2018) ("A trial court's jurisdiction over a criminal case consists of the power of the court over the 'subject matter' of the case, coupled with 'personal' jurisdiction over the accused."). "[A] lack of personal or subject-matter jurisdiction deprives a court of any authority to render a judgment." *Ex parte Moss*, 446 S.W.3d 786, 788 (Tex. Crim. App. 2014).

With respect to subject-matter jurisdiction, district courts have jurisdiction over felony offenses and certain misdemeanors not at issue here. *Trejo v. State*, 280 S.W.3d 258, 263 (Tex. Crim. App. 2009) (Keller, J., concurring) (quoting Tex. Const., art. V, § 8 and Tex. Code

Crim. Proc. Ann. art. 4.05) (recognizing that district courts have subject-matter jurisdiction "in [all] criminal cases of the grade of felony"). County courts at law have jurisdiction over Class A and Class B misdemeanors. *See* Tex. Code Crim. Proc. Ann. art. 4.07 (establishing criminal jurisdiction of county courts); Tex. Gov't Code Ann. § 25.0003(a) (stating that statutory county courts possess the same jurisdiction as county courts), § 25.0731(a)(7) (stating that County Court at Law No. 7 of El Paso County is a statutory county court).

In a criminal case, the charging instrument is what gives a trial court personal jurisdiction over a defendant, lasting until the termination of the proceedings. *Dunbar*, 297 S.W.3d at 780 (recognizing that the trial court acquired personal jurisdiction over the defendant when an indictment was filed against her but lost personal jurisdiction 30 days after sentencing). Unlike in civil cases, where personal jurisdiction over a party may be had merely by that party's appearance before the court, criminal jurisdiction over a person requires "the filing of a valid indictment or information" in a proper court. *Jenkins*, 592 S.W.3d at 898 (citing *Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex. Crim. App. 1980)); *see also Trejo*, 280 S.W.3d at 260 (observing that in a criminal case, jurisdiction "requires both a general grant of authority to the trial court *and* a charging instrument that invokes that jurisdiction over the particular case").

Here, there is no doubt that the county court had subject-matter jurisdiction over the offense of participating in a riot for which Gonzalez was indicted, as it is a Class B misdemeanor offense. Tex. Penal Code Ann. § 42.03(b), (e). But the question remains whether the return of the

13

indictment and the procedures that were followed properly invoked the county court's jurisdiction over Gonzalez's case.[9]

## B. The grand jury process and required procedures to transfer a misdemeanor indictment to a county court

The State has two available methods to charge a defendant with the commission of a Class B misdemeanor offense. First, the State may charge a person with a misdemeanor offense by filing an information. Tex. Const. art. V, § 17; Tex. Code Crim. Proc. Ann. art. 21.20; *see also Hullum v. State*, 415 S.W.2d 192, 195 (Tex. Crim. App. 1966), *underlying judgment rev'd on different grounds in opinion on appellant's second motion for rehearing without withdrawing original opinion*, 415 S.W.2d 198 (Tex. Crim. App. 1967). Second, a grand jury is authorized to inquire into misdemeanors and return indictments for such offenses. *See* Tex. Const. art. V, § 17; *Hullum*, 415 S.W.2d at 195; *Quarles v. State*, 385 S.W.2d 395, 396 (Tex. Crim. App. 1964) ("There can be no question that a grand jury may return an indictment charging a misdemeanor."). Here, only the second method is at issue.

### (1) Obtaining an indictment

A grand jury, once formed, "shall inquire into all offenses subject to indictment of which any grand juror may have knowledge or of which the grand jury is informed by the attorney representing the state or by any other credible person." Tex. Code Crim. Proc. Ann. art. 20A.051; *see also Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987) (explaining the grand jury process). "After hearing all testimony accessible to them, the grand jurors vote as to presentment

---

[9] We note that in his plea to the jurisdiction, Gonzalez argued the trial court lacked "subject-matter jurisdiction," and similarly, the trial court's order dismissing his indictment referred to the county court's "subject-matter jurisdiction." We do not take this to mean that the county court mistakenly believed it lacked subject-matter jurisdiction over Class B misdemeanors in general, but that it believed it lacked jurisdiction over Gonzalez's particular case due to an improperly filed indictment, thereby using the term, "subject-matter jurisdiction" in a broader sense of the word. *See Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009) (defining subject-matter jurisdiction broadly as encompassing both the jurisdiction to hear the type of offense and the jurisdiction to hear the defendant's particular case by invocation of either a valid indictment or information).

14

of an indictment." *Edone*, 740 S.W.2d at 448; *see* Tex. Code Crim. Proc. Ann. art. 20A.301. "If at least nine grand jurors concur in finding the bill, the foreperson shall make a memorandum of the vote with any information enabling the attorney representing the state to prepare the indictment." Tex. Code. Crim. Proc. Ann. art. 20A.301. The attorney representing the State must then prepare the "indictment found by the grand jury and [must] deliver the indictment to the foreperson," who must sign the indictment. Tex. Code Crim. Proc. Ann. art. 20A.302(a), (b).

### (2) Presenting an indictment

The Code of Criminal Procedure, under the heading "Presentment of Indictment," provides that once a grand jury has returned an indictment charging a defendant with a criminal offense, "the grand jury shall, through the foreperson, deliver the indictment to the judge or court clerk," and "[a]t least nine grand jurors must be present to deliver the indictment." Tex. Code Crim. Proc. Ann. art. 20A.303; *see also State v. Dotson*, 224 S.W.3d 199, 204 (Tex. Crim. App. 2007). Thus, presentment occurs when an indictment "is delivered by the grand jury, through its foreman, to the judge or clerk of court." *Carrillo v. State*, 2 S.W.3d 275, 277 n.5 (Tex. Crim. App. 1999).

"An indictment is considered as presented when it has been duly acted upon by the grand jury and received by the court." Tex. Code Crim. Proc. Ann. art. 12.06; *see also Allen v. State*, 570 S.W.3d 795, 799 (Tex. App.—Houston [1st Dist.] 2018), *aff'd*, 614 S.W.3d 736 (Tex. Crim. App. 2019). The Code further provides, "[a]n indictment, information, complaint, or other charging instrument or a related document in a criminal case may be filed in electronic form with a judge or clerk of the court authorized to receive the document." Tex. Code Crim. Proc. Ann. art. 21.011(a). Accordingly, an indictment is only presented to a court when (1) the foreperson properly presents it to the court or clerk, and (2) it is received by either the judge or the court

15

clerk.[10] *See* Tex. Code Crim. Proc. Ann. arts. 12.06, 20A.303, 21.011(a); *see also Whaley v. State*, No. 07-16-00126-CR, 2018 WL 3559235, at *2 (Tex. App.—Amarillo July 24, 2018, no pet.) (mem. op., not designated for publication) ("Article 20.21 provides the disjunctive conjunction 'or' in requiring delivery of the indictment to the judge or clerk of the court."); Tex. Const. art. V, § 12 (b) (defining an indictment as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense").

### (3) Transferring an indictment from the district court to a county court

The Texas Constitution mandates that, when grand juries empaneled in the district courts inquire into misdemeanors, "all indictments therefor returned into the District Courts shall forthwith be certified to the County Courts or other inferior courts, having jurisdiction to try them for trial[.]"[11] Tex. Const. art. V, § 17. Consistent with this provision, the Code of Criminal Procedure also provides that "[u]pon the filing of an indictment in the district court which charges an offense over which such court has no jurisdiction, the judge of such court shall make an order transferring the same to such inferior court as may have jurisdiction, stating in such order the cause transferred and to what court transferred." Tex. Code Crim. Proc. Ann. art. 21.26. Establishing required procedures to accomplish the transfer, the Code's provision entitled "Duty on Transfer" states:

> The clerk of the court, without delay, shall deliver the indictments in all cases transferred, together with all the papers relating to each case, to the proper court or

---

[10] The Code provides, "[i]f the defendant is in custody or under bond at the time the indictment is presented, the fact of the presentment shall be entered in the court's record, noting briefly the style of the criminal action, the file number of the indictment, and the defendant's name." Tex. Code Crim. Proc. Ann. art. 20A.304(a). But "[i]f the defendant is not in custody or under bond at the time the indictment is presented, the indictment may not be made public and the entry in the court's record relating to the indictment must be delayed until the capias is served and the defendant is placed in custody or under bond." *Id*. at 20A.304(b).

[11] The Constitution further provides if an "indictment be quashed in the County, or other inferior court, the person charged, shall not be discharged if there is probable cause of guilt, but may be held by such court or magistrate to answer an information or affidavit." Tex. Const. art. V, § 17. The parties here do not address this portion of the Constitution.

16

justice, as directed in the order of transfer; and shall accompany each case with a certified copy of all the proceedings taken therein in the district court, and with a bill of the costs that have accrued therein in the district court.

Tex. Code Crim. Proc. Ann. art. 21.28.

The Code further provides: "Any case so transferred shall be entered on the docket of the court to which it is transferred. All process thereon shall be issued and the defendant tried as if the case had originated in the court to which it was transferred." Tex. Code Crim. Proc. Ann. art. 21.29. Finally, when a case is improvidently transferred to a court lacking subject-matter jurisdiction over the case, the Code requires the transferee court to re-transfer the case to a court with subject-matter jurisdiction:

When a cause has been improvidently transferred to a court which has no jurisdiction of the same, the court to which it has been transferred shall order it to be re-transferred to the proper court; and the same proceedings shall be had as in the case of the original transfer. In such case, the defendant and the witnesses shall be held bound to appear before the court to which the case has been re-transferred, the same as they were bound to appear before the court so transferring the same.

Tex. Code Crim. Proc. Ann. art. 21.30.

### C. Analysis

#### (1) Could the grand jury indictment be filed directly in the county court?

Although the State initially argued in the trial court that the indictment could be filed in the county court without the need for a transfer order from the district court, it now appears to concede that such an order was necessary. We agree.

It has long been the rule in Texas that only a district court may assemble a grand jury and all indictments are presentable only in the district courts. *See Coker v. State*, 7 Tex. Ct. App. 83, 85 (1879); Tex. Const. art. V, § 13 (granting authority to the district courts to assemble grand juries). Chapter 19 of the Code of Criminal Procedure also makes it clear that district courts are

17

the only courts authorized to assemble a grand jury. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 19A.051 (authorizing the district judge to empanel a grand jury).

As well, Tex. Const. art. V, § 17 requires that a grand jury indictment accusing a defendant of a misdemeanor be presented to the district court in the first instance and may only thereafter be transferred to a trial court having jurisdiction of the offense.[12] The various statutory provisions set forth above reflect the same requirement—that indictments be presented to the district court then transferred to the inferior court having subject-matter jurisdiction over the offense. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 21.02(2) (an indictment shall be deemed sufficient if it appears that the "same was presented in the district court of the county where the grand jury is in session"); art. 21.26 (requiring district court judge, upon the filing of an indictment that "charges an offense over which [the district court] has no jurisdiction," to transfer the case to an inferior court); art. 21.30 (authorizing the judge of a court to which a case has been "improvidently transferred" to re-transfer the case to a proper court); *see also Aguillon v. State*, No. 14-17-00002-CR, 2017 WL 3045797, at *1 (Tex. App.—Houston [14th Dist.] July 18, 2017, pet. ref'd) (mem. op., not designated for publication) (recognizing that, after voting, the grand jury foreman must deliver the indictment to the district court judge or clerk of the court).

---

[12] We acknowledge the 1985 amendments to Tex. Const. art. V, § 12 but do not interpret them as intending to alter the requirement that presentment must be made in the district court, as clearly set forth in Tex. Const. art. V, § 17. In 1985, the Texas Constitution was amended, and Article V, § 12(b) now provides: "The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b). We have not found any authority, however, that this revision to the Constitution would allow a grand jury to present an indictment to *any court* of its choosing. To the contrary, the Court of Criminal Appeals has recognized that "[t]here is nothing in the legislative history of Article V, § 12(b) suggesting that it was believed that that article would automatically vest subject-matter jurisdiction in *any* court in which an indictment was presented[.]" *State v. Hall*, 829 S.W.2d 184, 188 (Tex. Crim. App. 1992). And as the concurring opinion pointed out in *DeDonato v. State*, "a literal reading of article V, § 12(b) could lead to absurd results," as it would allow the mere presentment of an indictment to vest jurisdiction in any court, and therefore, "absent an objection from the defendant, a capital murder case could be properly tried in a county court." *DeDonato v. State*, 819 S.W.2d 164, 168 (Tex. Crim. App. 1991) (Maloney, J., concurring, joined by Baird and Benavides, JJ.)). Moreover, any such interpretation would be in direct conflict with the above-described provisions in the Code and the Texas Constitution, which clearly require presentment to be made in the district court. *See generally Oakley v. State*, 830 S.W.2d 107, 111 (Tex. Crim. App. 1992) (recognizing that a court must "follow the historical tradition of reading and construing the Constitution as a whole and not piecemeal").

We see no basis in law that would allow the county court or the county clerk to bypass the legally required presentment and transfer procedures in the district court and accept presentment of the indictment in the first instance, or to file the indictment without a proper transfer order. *See Bird v. State*, 91 S.W. 791, 791 (Tex. Crim. App. 1906) (stating that "the county court was not authorized to impanel grand juries or receive indictments," and for the county court to have jurisdiction, there must be a transfer order from the district court); *Austin v. State*, 40 S.W. 724, 725 (Tex. Crim. App. 1897) (holding that "indictments could not be filed" directly in a county court without having been returned to a district court and transferred, via district court order, to the county court).

### (2)  Was the indictment properly transferred pursuant to the May 9 order?

Having conceded that an indictment must initially be presented in the district court then duly transferred to the county court, the State contends the district court's May 9 order reflects that these requirements were met. The State points out that in the order, the district court "certified" that the grand jury indictments were "returned" to the district court, and it further ordered that all indictments listed in the attached charging instrument report be "transferred to the County Courts having jurisdiction to try them for trial."

The State contends the "presumption of regularity" applies, and we must therefore presume, in the absence of any evidence to the contrary, that the district court's transfer order properly certified that the indictments were presented to the district court and the proper steps were followed to achieve a transfer to the county court. *See generally Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000) ("The presumption of regularity is a judicial construct that requires a reviewing court . . . to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court."); *see also Ex parte Stacey*, 709 S.W.2d 185, 189 (Tex. Crim. App.

1986) (recognizing that the presumption of regularity applies unless there is "a showing to the contrary"). The State contends that although there may have been a delay in obtaining the May 9 order, which came approximately two weeks after the indictment was filed in the county court, it nevertheless complied with Article 21.26, thus we should presume the cases were properly transferred.

The State further argues that neither the filing of an indictment in a county court nor the filing of a plea to the county court's jurisdiction ordinarily precludes a subsequent transfer of the case, so long as the case is properly transferred before trial. *See, e.g.*, *Lenzen v. State*, 16 S.W.2d 234, 234 (Tex. Crim. App. 1929) (recognizing that if the defendant had challenged the lack of a proper transfer order prior to trial, "the state might easily have procured a proper certificate of transfer covering the error, failing in which the court should have sustained the plea to the jurisdiction"); *Bonner v. State*, 44 S.W. 172, 173 (Tex. Crim. App. 1898) (stating that if a defendant's plea had been timely made challenging the lack of a transfer order, "the state might have procured a proper certificate of transfer"); *Hawkins v. State*, 17 Tex. Ct. App. 593, 595–96 (1885) (holding that the trial court had jurisdiction when the county attorney "obtained a *certiorari* to the district clerk to send [to the county court] a complete transcript of the record" that corrected problems with an original transfer of the case, even though the county court case had previously been dismissed due to a deficient transfer from the district court).

But Gonzalez contends the evidence of record shows procedures were not correctly followed in the first instance in his case. Gonzalez maintains that his timely plea to the jurisdiction required dismissal of the case by the county court. Countering the State's argument, he urges that regardless of when a transfer order was obtained, it could only be effective if the indictment to be transferred was actually filed in the district court in the first instance—and a case thereafter opened

20

with a cause number assigned—so as to permit the district court clerk to act on a transfer order and transfer the case to the county court. In support of his argument, Gonzalez points out that Article 21.26 requires a transfer order to identify "the cause transferred." Tex. Code Crim. Proc. Ann. art. 21.26. He further notes that Article 21.28 similarly provides that there must be a "case" pending in the district court for it to be transferred to the county court. And he contends that if no case was properly filed in the district court, there would be nothing to transfer to the county court. We agree.

Although the district court's May 9 order reflects that the grand jury indictments were "returned" to the district court, there is nothing in the order itself or in the record provided to the county court to support a finding that a "case" or "cause" was opened in the district court from which a transfer could have been accomplished. As set forth above, and as Gonzalez points out, the transfer order does not reference any district court cause numbers, and instead only references county court cause numbers. Similarly, the document attached to the transfer order, which identifies the cases to be transferred, lists and identifies cases solely by county court cause numbers. In short, there is nothing in the record to suggest that the district court clerk had opened a case on Gonzalez's indictment. *See Lynn v. State*, 13 S.W. 867, 868 (Tex. Ct. App. 1890) (stating that "there must be a file number upon the indictment in the district court" and that "it is a sufficient description and identification of the cause to state its file number"); *Dittforth v. State*, 80 S.W. 628, 628 (Tex. Crim. App. 1904) ("It has been held that in the transfer of cases[,] a general order, giving the *numbers in the district court*, and character of offense, is sufficient[.]" (emphasis added)).

Nor is there anything in the record before us to suggest that the district clerk opened any cases for filing. When a district clerk receives a document for filing, the clerk has a ministerial duty to accept the document and to duly file it in her records. *See generally In re Am. Airlines, Inc.*,

No. 02-22-00201-CV, 2022 WL 4131198, at \*4 (Tex. App.—Fort Worth Sept. 12, 2022, original proceeding) (mem. op.) (recognizing that "[a] district clerk has a ministerial duty to file a document when it has been properly presented to the clerk"). The clerk does so by indorsing a file mark on the document, recording it in her file docket, and maintaining it in her files. *See In re Smith*, 270 S.W.3d 783, 786 (Tex. App.—Waco 2008, no pet.) ("The clerk 'files' a document by indorsing a file mark on it, recording it in the clerk's file docket, and maintaining the document in the clerk's file for the suit." (citing Tex. Gov't Code Ann. § 51.303 (setting forth duties of district clerk in filing and maintaining court records))); *see also* Tex. Gov't Code Ann. § 51.304 (setting forth duties of district clerk to preserve court files); Tex. Code Crim. Proc. Ann. art. 2A.153 (setting forth duties of district clerk to receive and file all papers presented to her). Here, there is nothing in the record to suggest the indictments were ever filed with the district clerk.

In addition, in regard to a proper transfer of an indicted misdemeanor case, there is nothing in the record to demonstrate that the district clerk complied with the Article 21.28 requirements by delivering to the county court the "papers" in the case or a "certified copy of all the proceedings taken therein in the district court." And the indictment itself only bears the county court clerk's file-stamp and county court cause number. As such, the evidence in the record before the county court established that the indictments were filed in the county court in the first instance without a proper transfer order. Although the district court thereafter "ordered" the indictment transferred to the county court, there is no evidence that a case was properly filed and opened in the district court that could be transferred.[13] Therefore, any "presumption of regularity" has been overcome by the

---

[13] In fact, as set forth above, at the May 15 hearing, the State argued that a valid indictment had been presented to the county court, no transfer order was needed, this case was not filed in the district court and then transferred out, the indictment was filed in the first instance by the county clerk, and it would "make[] no sense" to file a case in the district court and open a district court case just to transfer the case to the county court and open a county court case, thereby acknowledging that this case was filed in the first instance by the county clerk and was never filed by the district clerk or assigned to a district court.

evidence in the record before us. *See Ex parte Stacey*, 709 S.W.2d 185, 189 (Tex. Crim. App. 1986) (concluding that the presumption of regularity in the court proceedings was rebutted by the evidence in the record supporting a "contrary" finding); *see also Dittforth*, 80 S.W. at 628 (stating "the burden is on the state to show that the particular case was ordered transferred"). Moreover, there is no evidence of a properly executed transfer of the district court record by the district clerk. *See* Tex. Code Crim. Proc. Ann. art. 21.28.

Accordingly, we agree with Gonzalez that his case was not properly transferred to the county court.

### (3) Was the failure to properly transfer the case a jurisdictional defect?

Having found that the proper steps to accomplish a transfer were not taken, we turn to the question of whether the failure to follow these steps can be construed as a mere procedural error or whether the failure was jurisdictional. We agree with Gonzalez that the failure constitutes a jurisdictional deficiency that may be raised and ruled upon prior to trial.

As set forth above, in a criminal case, the charging indictment is what gives a trial court "personal jurisdiction" over a defendant. *Dunbar*, 297 S.W.3d at 780; *Jenkins*, 592 S.W.3d at 898. In turn, the Court of Criminal Appeals has recognized that because an indictment may not be presented directly to a county court, "[a]n order of the [district court] transferring the indictment to the [county court] is essential to the jurisdiction of the latter."[14] *Horton v. State*, 20 S.W.2d 1111,

---

[14] Appellant relies on *Henderson v. State*, 526 S.W.3d 818, 821 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) for the proposition that the lack of a transfer order is a "procedural" matter and not a jurisdictional one, which "can be cured at any time." *Henderson*, however, involved a case in which a district clerk filed an indictment in a district court other than the court in which the grand jury had been assembled. *Id*. at 821. In that case, the court held that the lack of a motion to transfer the case was, "at best, a procedural issue." *Id*. But the holding in *Henderson* has no impact on the question of whether a transfer order is required to invoke the jurisdiction of a county court. As set forth above, a transfer order is only required when an indictment is transferred from a district court to an inferior court, such as the county court. Tex. Code Crim. Proc. Ann. art. 21.26. In contrast, when approved by the local rules, a district clerk may assign an indictment to a district court within the same county and is not required to file the indictment in the court in which the grand jury was assembled, and therefore may do so without a transfer order. *See Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd); *Tamez v. State*, 27 S.W.3d 668, 675 n.1 (Tex. App.—Waco

1111 (Tex. Crim. App. 1929); *see also Austin v. State*, 40 S.W. 724, 725 (1897) (recognizing that without a proper order transferring an indictment to an inferior court, the "inferior court can acquire no jurisdiction"); *Bird*, 91 S.W. at 791 (recognizing that an order transferring jurisdiction from the district court to the county court is required "in order to attach jurisdiction of the county court").

The Court of Criminal Appeals in *Lenzen* recognized that a defendant may file a plea challenging the jurisdiction of a county court prior to trial based on the contention that the indictment charging him with a misdemeanor "was not transferred by proper order from the district court[.]" *See Lenzen*, 16 S.W.2d at 234. But the court recognized that such a challenge would come too late if it was made for the first time on appeal, expressly overruling a line of cases that held otherwise. *Id*. In effect, the court ruled that the defendant waived his right to contest the court's jurisdiction over his case, i.e., his personal jurisdiction, by standing trial, thereby subjecting himself to the jurisdiction of the court. *Id*. ("It seems beyond question that the accused having admitted the jurisdiction of the trial court by entry of appearance and plea and the standing of trial, he should not be allowed to raise the question thereafter.").

In a long line of cases that followed, the Court of Criminal Appeals continued to recognize that when a grand jury indictment is filed in the county court without a proper transfer order from the district court, the defendant may file a plea to the jurisdiction seeking dismissal of the

---

2000, pet. ref'd); *see also* Tex. Gov't Code Ann. § 24.024 (providing that "[i]n a county with two or more district courts, the district judges may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts"). This is because the district clerk for a county serves as the district clerk for all of the district courts in the county. Tex. Const. art. V, § 9 (providing that the district clerk "shall be a clerk for the District Court of each county" in which she is elected); *Duclos v. Harris Cnty.*, 263 S.W. 562, 563 (Tex. 1924) ("A clerk is an essential to a district court, and also each county is by law provided with one[.]"). However, the district clerk and the county clerk are two separate positions created by the Texas Constitution. Tex. Const. art. V, § 9 (creating the position of the district clerk); Tex. Const. art. V, § 15 (creating the position of the county clerk to serve as the clerk for the county courts); *see also Hardy Oil Co. v. Markham State Bank*, 131 S.W. 440, 441 (Tex. App.—San Antonio 1910, no writ) (holding that although the Texas Constitution permits a single clerk to perform the duties of both positions, "the duties and powers are just as much separated as though held by different persons"). Accordingly, unless authorized by law, the county clerk may not assume the duties of the district clerk.

indictment prior to trial, but the failure to do so before trial waives the challenge. *See, e.g.*, *King v. State*, 255 S.W.2d 879, 881 (Tex. Crim. App. 1953) ("In the absence of a plea to the jurisdiction of the [transferee court], timely filed and presented, the question as to the transfer of the case was waived."); *McNeal v. State*, 346 S.W.2d 345, 346 (Tex. Crim. App. 1961) (holding that a plea to the jurisdiction related to a transfer order "comes too late after notice of appeal"); *see generally Ex parte Rodgers*, 598 S.W.3d 262, 268 (Tex. Crim. App. 2020) ("Because Applicant and his trial counsel raised no objection to the indictment, they may not now challenge its efficacy to invoke the jurisdiction of the district court."). In sum, the point remains that defendants may contest the county court's jurisdiction prior to trial based on complaints of improper transfer of a case following return of a grand jury indictment. Gonzalez did just that.

### (4) Was dismissal the proper remedy?

This brings us to the final step of our analysis, which is to determine whether the trial court's decision to dismiss the indictment and case was the proper "remedy." As a preliminary matter, the State complains that the county court improperly shifted the burden to the State to "remedy the situation as perceived by the trial court judge," or in other words, to "fix" the problem created by the improperly transferred indictments. And the State contends it was without "authority" to "correct" any "mistake[s]" made by the district court. The county court, however, was not requiring the State to correct any such "mistake[s]." Instead, at the May 15 hearing, it merely noted that the State could re-indict the defendant and ensure the process was properly followed with respect to any new charging instrument. But the State did not re-indict Gonzalez; instead, it decided to stand firm on the indictment as filed and on the record before the county court.

The State still contends on appeal that if the county court believed it lacked jurisdiction over Gonzalez's case due to the improper transfer, the proper remedy was to re-transfer the cases "back to . . . the court with the sitting grand jury," presumably to allow the district court or the district clerk to address the problem.[15] In support of this argument, the State relies primarily on Code of Criminal Procedure Article 21.30, which provides for a re-transfer of a case to a proper court when it has been improvidently transferred to a court lacking jurisdiction. Tex. Code Crim. Proc. Ann. art. 21.30. But as Gonzalez points out, this re-transfer provision only applies to situations in which a "case" has been opened in a court and then improvidently transferred to the wrong court, i.e., a court lacking subject-matter jurisdiction. We agree that Article 21.30 only applies when a properly filed case is improvidently transferred to the wrong court, not when it was not properly filed and transferred in the first instance.[16] *See id*.

In addition, the two cases upon which the State relies for the proposition that the county court had the authority to re-transfer the indictment to the district court are not on point. As Gonzalez notes, these cases involved situations in which the indictments were correctly filed in the district court in the first instance but improperly tried in those courts because they lacked subject-matter jurisdiction over misdemeanor-level offenses.

---

[15] The State also argues in a separate section of its brief that "the trial court should have enquired of its Clerk in an attempt to determine whether a proper transfer had occurred . . . and should have[] instructed its clerk to remedy [any] deficiencies." The State fails, however, to explain how the county court's clerk would have authority to remedy any deficiencies in a grand jury's presentment of an indictment to a district court, in a district court's order transferring a case to the county court, or in a district clerk's actions in transferring a case pursuant to a district court's order. Moreover, the State provides no authority for this argument and has therefore waived it. *See* Tex. R. App. P. 38.1(i); *Adams*, 2012 WL 3025915, at *5.

[16] For example, if the district court mistakenly transfers to the county court a case initially filed in the district court that sufficiently charges a felony offense, because the county court would lack jurisdiction over the case, it would be required to re-transfer the case to the district court—the court with subject-matter jurisdiction. *See Pittman v. State*, 310 S.W.2d 103, 104 (Tex. Crim. App. 1958); *State v. Williams*, 780 S.W.2d 891, 891–93 (Tex. App.—San Antonio 1989, no pet.).

Specifically, in *Ex parte Jones*, the Court of Criminal Appeals reversed a felony theft conviction based on an indictment alleging a Class B misdemeanor in its primary count, but also alleging the defendant had been convicted of a prior felony. 682 S.W.2d 311, 313 (Tex. Crim. App. 1984) (en banc). Because the allegation of one prior felony did not convert the misdemeanor charge into a third-degree felony, nor did it properly enhance the charge to a felony-level offense, the court held that the district court lacked subject-matter jurisdiction over the case. *Id*. (citing Tex. Const., art. V, § 8). As a result, the court set aside the felony conviction and the cause was remanded to the district court for transfer to a county court with jurisdiction over the misdemeanor offense alleged in the indictment. *Id*. The Court of Criminal Appeals reached the same conclusion in *Harris v. State*, 565 S.W.2d 66, 68 (Tex. Crim. App. 1978) (en banc). There, indictments alleged misdemeanor-level offenses prohibiting delivery of marihuana, but the defendant was convicted on those offenses in a district court. *Id*. The court reversed the convictions and the causes were remanded to the district court for transfer to a court having misdemeanor jurisdiction for trial. *Id*. (citing Tex. Const. art. V, § 17; Tex. Code Crim. Proc. Ann. art. 21.26). Here, in contrast, we are faced with a situation in which there is no evidence that Gonzalez's case was properly filed in *any* court. More particularly, there is no evidence that the county court had jurisdiction over Gonzalez's case, such that it had the authority to take any action other than to dismiss it.

It is fundamental that "a source of jurisdiction must be found to authorize" any action by the trial court. *State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002). "Without jurisdiction, [a] trial court has no power to act." *Id.* Here, the State has failed to identify a source of jurisdiction or authority that would allow the trial court to transfer the indictment to the district court under these circumstances, nor are we aware of any. We therefore conclude that this would not have been a proper remedy. Stated otherwise, the "[j]urisdiction of a court must be legally invoked, and when

27

not legally invoked, the power of the court to act is as absent as if it did not exist." *Ex parte Caldwell*, 383 S.W.2d 587, 589 (Tex. Crim. App. 1964) (citing *State v. Olsen*, 360 S.W.2d 398, 400 (Tex. 1962)).

It is well-established that when a trial court lacks jurisdiction to hear a case, the proper remedy is dismissal. *See Garcia*, 596 S.W.2d at 528 n.5 (recognizing that if no source of jurisdiction exists, "the court is without jurisdiction [and] it has no authority to render any judgment other than one of dismissal"). Thus, in a series of cases, courts have recognized that when a defendant challenges a county court's jurisdiction to hear a case prior to trial based on the lack of a proper transfer order, the proper remedy is dismissal of the case for lack of jurisdiction. *See, e.g.*, *Wilkins*, 5 S.W.2d at 770 ("If there was [no proper transfer], the prosecution should be dismissed."); *Dittforth*, 80 S.W. at 628 (holding that the county court erred by not granting defendant's "motion in the nature of a plea to the jurisdiction of the court, or to dismiss the case, on the ground that there was no sufficient transfer of the indictment from the district to the county court"); *Sommerlatte v. State*, 39 S.W.2d 38, 39 (1931) (holding that the county court should have granted the defendant's motion to quash an indictment, which was made in the form of a plea to the jurisdiction, where the evidence established that there was no valid transfer of the indictment from the district court); *Herenz v. State*, 199 S.W. 618, 618–19 (Tex. Crim. App. 1917) (holding that county court should have granted defendant's plea to the jurisdiction where there was no evidence of a valid presentation to the district court or a valid transfer order); *Lenzen*, 16 S.W.2d at 234 (concluding that if defendant had brought a plea challenging the county court's jurisdiction due to the lack of a proper transfer order, the court would have been required to grant the plea due to the lack of jurisdiction to hear the defendant's case); *Brumley v. State*, 1881 WL 9628, at *1 (Tex. Ct. App. 1881) (holding that where the record established that an indictment was "not

properly and legally transferred" to the county court, the trial court erred by denying defendant's motion to quash the indictment).

As the State did not establish that Gonzalez's case was properly filed with the district court and thereafter transferred from that court so as to give the county court jurisdiction over his case, we conclude that the county court acted properly in granting Gonzalez's plea to the jurisdiction and dismissing his case.

The State's sole issue on appeal is overruled.

## VI. CONCLUSION

Having overruled the State's sole issue on appeal, we affirm the trial court's order dismissing Gonzalez's case.

PER CURIAM

September 8, 2025

Before Palafox, J., Soto, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.) (sitting by assignment)

(Do Not Publish)